T.C. Memo. 2004-89

UNITED STATES TAX COURT

CATHERINE ROSENTHAL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2601-01.                    Filed March 26, 2004.

        P and H filed a joint 1996 Federal income tax
return on which H failed to report a taxable
distribution from his individual retirement account
(IRA).  P was not aware of the existence of the IRA
distribution at the time the 1996 return was filed.
The omission was discovered in 1998 and, on Nov. 22,
1998, after H's death on Sept. 1, 1998, P filed an
amended 1996 return and paid the additional tax
attributable to the omitted income.  P also paid the
interest on the additional tax on Feb. 10, 1999.  P
claimed relief from joint liability for the additional
tax under sec. 6015(b), (c), and (f), I.R.C.  Her claim
was denied by R.  P timely filed a petition with this
Court pursuant to sec. 6015(e), I.R.C., seeking review
of R's denial of innocent spouse relief.

        1.  Held, because there is no tax deficiency, P is
ineligible for relief under sec. 6015(b) and (c), I.R.C.

2. Held, further, under the facts and circumstances, R's denial of equitable relief under sec. 6015(f), I.R.C., constitutes an abuse of discretion.

William O. Lenihan, for petitioner.

Theresa G. McQueeney, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Pursuant to the provisions of section 6015,[1] petitioner applied for relief from joint and several liability for the 1996 taxable year by submitting a Form 8857, Request for Innocent Spouse Relief, dated July 25, 1999. Respondent denied petitioner's request for relief pursuant to a notice of determination dated December 21, 2000 (the notice of determination).  The notice of determination enclosed a Form 886-A, Explanation of Items, in which respondent stated the basis for his denial of relief as follows:

> Innocent Spouse Relief cannot be granted due to the fact that you failed to meet the centralized factors for relief.  Electing spouse failed to show she had no knowledge of the unreported income from the pension distribution nor that she did not benefit from the income.

On February 26, 2001, petitioner timely filed a petition with this Court under section 6015(e) for review of respondent's

---

[1]  Unless otherwise noted, all section references are to the Internal Revenue Code as currently in effect, and Rule references are to the Tax Court Rules of Practice and Procedure.

determination (the petition).

The sole issue for our decision is whether respondent abused his discretion in denying petitioner relief from joint and several liability under section 6015(b), (c), (f).

### FINDINGS OF FACT[2]

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Brooklyn, New York.

The Joint Returns

Petitioner and her husband, Louis Rosenthal (separately, petitioner and Louis; together, the Rosenthals) timely made a joint Federal income tax return for calendar year 1996 on or about February 27, 1997. That return (sometimes, the original 1996 return) reported "total income" on line 22 of $32,245 consisting, in part, of $1,308 in taxable "pensions and annuities". The return reported tax due of $1,631, total tax payments of $5,774, and claimed an overpayment of $4,143 to be

---

[2] Petitioner did not file a reply brief. As a result, petitioner has failed to set forth objections to respondent's proposed findings of fact. See Rule 151(e)(3). Accordingly, we conclude that petitioner concedes that respondent's proposed findings of fact are correct except to the extent that petitioner's findings of fact are clearly inconsistent therewith. See Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

applied to the Rosenthals' 1997 estimated tax. The return was prepared by Louis's accountant, Harold Benenstock, a C.P.A. who prepared returns for both Louis's plumbing business and the Rosenthals personally. Petitioner was not involved in the preparation of the return.

Shortly before April 15, 1998, during the preparation of the Rosenthals' 1997 joint return, Mr. Benenstock discovered that, in 1996, Louis had withdrawn a large amount of money from his account at Republic National Bank (formerly Crossland Savings Bank), but Mr. Benenstock did not believe the withdrawal was taxable. Louis suffered a stroke in August 1998 and died on September 1, 1998. Petitioner never discussed the withdrawal with Louis, nor was she aware of the amount prior to his death.

After Louis's death, petitioner's attorney, recognizing that the withdrawal constituted a taxable distribution from an Individual Retirement Account (IRA) (the IRA distribution), contacted Mr. Benenstock and asked him to prepare an amended 1996 return. On November 22, 1998, petitioner submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for 1996 on behalf of herself and Louis (the amended 1996 return). The "Explanation of Changes to Income, Deductions, and Credits" contained the following statement:

> Taxpayer, 90 years old, transferred $90,000 from
> individual retirement account. He did not receive a
> 1099R and did not report income on his individual
> return.

The inclusion of the additional $90,000 in income increased the tax due less tax payments from the $4,143 overpayment reported on the original 1996 return to a net tax due of $24,677, which was reported on the amended 1996 return. The amended 1996 return was signed by petitioner as spouse and by Mr. Benenstock as preparer. There was no signature on behalf of the deceased Louis.

Petitioner paid the total tax due ($28,820) concurrent with the filing of the amended 1996 return. She paid that amount from one of her accounts with Dime Savings Bank. On February 10, 1999, in response to an IRS request for $4,334 of interest due on the tax underpayment for 1996, petitioner mailed a check in that amount to the IRS, drawn on her Dime Savings Bank checking account, which was reflected as paid, on an IRS transcript, as of February 12, 1999.

The Rosenthals

Petitioner and Louis were married in 1976. They had no children together, but each had children (and, in the case of Louis, grandchildren)[3] from a prior marriage.

Louis owned and operated a plumbing business for more than 50 years. He retired from that business in 1994. Petitioner did not participate in and had no knowledge of any aspect of that business.

---

[3] The record does not indicate whether petitioner has grandchildren.

Petitioner was employed as a registered nurse at the time of her marriage to Louis and continued in the profession throughout her marriage except for a brief "retirement" which began in April 1996 and ended in 1997 when she returned to work. At the time of the trial, she was again retired. Her highest level of education was a degree from nursing school. She never attended college. Upon her marriage to Louis, she sold her house, and she, Louis, and her children moved into a house, which Louis purchased with his own funds in his own name (the house).

Financial Affairs

From the inception of his marriage to petitioner, Louis handled all of the household finances, paid all the bills, including the quarterly real estate taxes on the house, made the major purchases (e.g., automobiles), and gave petitioner $160 per week to purchase groceries and other household necessities. Petitioner paid for her personal charge accounts and medical insurance.

Bank Accounts

Petitioner and Louis maintained separate bank accounts. Petitioner maintained accounts at Greenpoint Bank and Dime Savings Bank, and she deposited her salary in one of her accounts at Dime Savings Bank. Louis maintained at least six individual accounts and one trust account (for a grandchild). One of Louis's accounts was his IRA at Crossland Savings Bank, which

later became Republic National Bank.  In 1996, he withdrew the unreported $90,000 from Republic National Bank.  There is no direct evidence of what Louis did with the unreported $90,000. He did, however, own a certificate of deposit (CD) issued by Republic National Bank.  That bank advised Louis that, on February 2, 1997, it had renewed (for 6 months until maturity on August 2, 1997) a CD with a balance of $91,213.  The Republic National Bank CD bore a different account number (No. 095-9501672878) than the former Crossland Savings Bank IRA (No. 4888752).

In the innocent spouse questionnaire attached to her request for innocent spouse relief dated July 25, 1999, petitioner listed both her and Louis's bank accounts.  Next to her listing of Louis's account at Republic National Bank she wrote the account number and "($90,000)".

Louis's Will

Louis died testate, and, under the terms of his will, petitioner received: (1) the house, "all policies of insurance relating thereto, and all of the contents thereof"; (2) all of Louis's "tangible personal property", and (3) his "Home Savings Bank Account No. 6537415082 and Crossland Savings Bank Account No. 4888752" identified in the will as his "pension accounts". The Home Savings Bank account is not listed on Schedule B of either the original or the amended 1996 return or on petitioner's

innocent spouse questionnaire. Presumably, that account was closed before 1996. The residuary estate went to Louis's four grandchildren.

Petitioner's Financial Circumstances After Louis's Death

Petitioner's attorney unsuccessfully attempted to trace the proceeds of the IRA distribution.

The house, inherited by petitioner from Louis, was valued at $247,000 at the time of Louis's death and was mortgage free. Since Louis's death, petitioner has paid her customary living expenses and generally maintained the same standard of living that she maintained prior to his death.

OPINION

I. Introduction

As a general rule, spouses filing joint Federal income tax returns are jointly and severally liable for all taxes shown on the return or found to be owing. Sec. 6013(d)(3). In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for relief therefrom under section 6015. There are three types of relief available under section 6015: (1) full or apportioned relief under section 6015(b); (2) proportionate tax relief for divorced or separated taxpayers under section 6015(c); and (3) equitable relief under section 6015(f) when relief is unavailable under either section 6015(b) or (c).

A taxpayer may seek relief from joint and several liability by raising the matter as an affirmative defense in a petition for redetermination invoking this Court's deficiency jurisdiction under section 6213(a) or, as in this case, by filing a so-called stand-alone petition challenging the Commissioner's final determination denying the taxpayer's claim for such relief (or his failure to rule on the taxpayer's claim within 6 months of its filing). See sec. 6015(e)(1); Maier v. Commissioner, 119 T.C. 267, 270-271 (2002), affd. 93 AFTR2d 2002-1139 (2d Cir. 2004); Ewing v. Commissioner, 118 T.C. 494, 496-497 (2002).[4]

In the petition, petitioner seeks relief under all three of the available relief provisions: section 6015(b), (c), and (f). The essence of petitioner's claim is that she should be relieved of liability for the tax and interest occasioned by the reporting of the IRA distribution. Respondent argues that, because petitioner has paid the additional tax attributable to the IRA distribution, "there is no understatement, deficiency or underpayment to which relief under * * * [section] 6015 is applicable."

Except as otherwise provided in section 6015, petitioner bears the burden of proof. See Rule 142(a).

---

[4] A taxpayer may also request relief from joint and several liability on a joint return in a petition for review of a lien or levy action. See secs. 6320(c), 6330(c)(2)(A)(i); Maier v. Commissioner, 119 T.C. 267, 271 (2002), affd. 93 AFTR2d 2002-1139 (2d Cir 2004).

II. Relief Under Section 6015(b) and (c)

Section 6015(e)(1), in pertinent part, provides this Court with jurisdiction to "determine the appropriate relief available" under section 6015 to "an individual against whom a deficiency has been asserted".  Consistent with that language and similar language in section 6015(b) and (c),[5] we have observed that the existence of a tax deficiency is a prerequisite to our granting of relief under either of those subsections.  See Block v. Commissioner, 120 T.C. 62, 66 (2003).  Because there is no tax deficiency asserted by respondent with respect to either the original or amended 1996 returns, petitioner cannot qualify for innocent spouse relief under section 6015(b) or (c).

III. Petitioner's Eligibility To Seek Relief Under Section 6015(f)

A.  Statutory Requirements

Section 6015(f) provides:

> (f) Equitable relief.  Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or

_____

[5] Under sec. 6015(b)(1)(D), an individual who signed a joint return with another individual and who is seeking innocent spouse relief must show that "taking into account all the facts and circumstances, it is inequitable to hold * * * [such] individual liable for the deficiency in tax * * * attributable to * * * [the other individual's] understatement".  Similarly, an individual taxpayer may seek relief pursuant to sec. 6015(c)(1) for an "individual's liability for any deficiency which is assessed with respect to the return".

any deficiency (or any portion of either); and

     (2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

For the reasons stated above, petitioner satisfies the requirement of section 6015(f)(2) that relief not be available under subsection (b) or (c). Moreover, the absence of a deficiency does not deprive us of jurisdiction over petitioner's claim for equitable relief under section 6015(f). See Ewing v. Commissioner, supra at 506-507. Nor, for the reasons discussed in the next section, is equitable relief under section 6015(f) precluded by the absence of an unpaid tax liability.

B.   Eligibility Requirements of Rev. Proc. 2000-15

Pursuant to his authority, under section 6015(f), to prescribe "procedures" for granting equitable relief pursuant to that provision, respondent issued Notice 98-61, 1998-2 C.B. 756, which provided interim guidance for taxpayers seeking equitable relief from joint and several liability. Notice 98-61 was superseded by Rev. Proc. 2000-15, 2000-1 C.B. 447, effective January 18, 2000, which, in turn, was superseded by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, effective for requests for relief filed on or after November 1, 2003, and for requests for relief pending on November 1, 2003, for which no preliminary determination letter had been issued as of that date.

Petitioner's request for relief and respondent's determination are subject to Rev. Proc. 2000-15 because that revenue procedure was in effect when respondent evaluated petitioner's request and when respondent issued the notice of determination on December 21, 2000. See Ewing v. Commissioner, 122 T.C. 32, 44 n.12 (2004).

Section 4.01 of Rev. Proc. 2000-15, 2000-1 C.B. at 448, lists the seven "threshold conditions" for eligibility to be considered for equitable relief, one of which (set forth in section 4.01(4)) is as follows:

> (4) Except as provided in the next sentence, the liability remains unpaid. A requesting spouse is eligible to be considered for relief in the form of a refund of liabilities for: (a) amounts paid on or after July 22, 1998, and on or before April 15, 1999; and (b) installment payments, made after July 22, 1998, pursuant to an installment agreement entered into with the Service and with respect to which an individual is not in default, that are made after the claim for relief is requested.

Because petitioner's payment of the tax attributable to the IRA distribution occurred between July 22, 1998, and April 15, 1999 (on November 22, 1998), petitioner's payment of the joint tax liability does not render her ineligible to seek equitable relief under section 6015(f).[6]

---

[6] Rev. Proc. 2003-61, 2003-32 I.R.B. 296, 299, eliminates the window period restriction on refunds of paid amounts and generally provides that a requesting spouse is eligible for a refund of tax payments made after July 22, 1998, "if the requesting spouse establishes that he or she provided the funds

(continued...)

There is no dispute that petitioner meets the remaining six eligibility requirements of Rev. Proc. 2000-15, section 4.01. Therefore, we find that petitioner is eligible to seek relief under section 6015(f).

IV.  Petitioner's Entitlement To Equitable Relief Under Section 6015(f)

   A.  Factors for Determining Whether To Grant Equitable Relief Under Section 6015(f)

Rev. Proc. 2000-15, section 4.03, 2000-1 C.B. at 448 provides in pertinent part:

> The Secretary may grant equitable relief under section 6015(f) * * * if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or any part of the * * * liability * * *.

Rev. Proc. 2000-15, section 4.03, further provides "a partial list of positive and negative factors that will be taken into account" in determining the appropriate relief under section

---

[6](...continued) used to make the payment for which he or she seeks a refund".  It also must be shown that the payments were not made with the joint return and were not joint payments or payments that the nonrequesting spouse made.  Therefore, it appears that petitioner would be eligible to seek a refund of her tax payment under Rev. Proc. 2003-61, were it applicable.  It further appears that, on the basis of our conclusion in Washington v. Commissioner, 120 T.C. 137, 158-159 (2003), that the term "unpaid tax" in sec. 6015(f)(1) refers to tax reported on a return but not paid with the return rather than to amounts remaining unpaid when sec. 6015(f) relief is requested, respondent has abandoned the window period requirement of sec. 4.01 of Rev. Proc. 2000-15, even for tax years covered by that revenue procedure.  See Ziegler v. Commissioner, T.C. Memo. 2003-282.

6015(f), and it states that "[n]o single factor will be determinative * * * in any particular case. Rather, all factors will be considered and weighed appropriately." Rev. Proc. 2000-15, section 4.03(1) and (2), 2000-1 C.B. at 448-449, sets forth the "partial list" of factors that the Commissioner will consider in deciding whether to grant equitable relief under section 6015(f). Section 4.03(1) of the revenue procedure lists six factors the presence or absence of which weighs in favor of granting equitable relief (positive factors), and section 4.03(2) of the revenue procedure lists six factors the presence or absence of which weighs against granting equitable relief (negative factors). Four of the six factors on each list have a reciprocal opposite on the other list, so that the presence or absence of the circumstance referred to will necessarily be positive or negative.[7] The absence of the circumstances referred to by either or both of the other two factors on each list is considered neutral under Rev. Proc. 2000-15, section 4.03. Because four of the six factors on each list are common to both lists, there are actually eight separate and distinct factors set forth in Rev. Proc. 2000-15, section 4.03.

---

[7] In one case, the reciprocal circumstances are that "[t]he nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability" (positive) or, conversely, that the requesting spouse bears that obligation (negative). If neither spouse bears that obligation, the resulting absence of the factor is necessarily neutral.

B.  Application of the Factors to Petitioner

1.  Respondent's Notice of Determination

Respondent based his denial of equitable relief on a finding that petitioner "failed to show" that she (1) lacked knowledge of the IRA distribution and (2) did not benefit from that distribution.  We interpret that finding as a finding that petitioner did have knowledge of the IRA distribution and did significantly benefit from that distribution.  Knowledge or reason to know of "the item giving rise to a deficiency" and the existence of a significant benefit "(beyond normal support) from the unpaid tax liability or items giving rise to the deficiency" are both negative factors weighing against relief pursuant to Rev. Proc. 2000-15, section 4.03(2)(b) and (c).  In his notice of determination respondent characterized the presence of those negative factors as a failure on petitioner's part "to meet the centralized factors for relief."

Petitioner's burden is to demonstrate that respondent's denial of equitable relief under section 6015(f) was an abuse of discretion; i.e., that respondent acted arbitrarily, capriciously, or without sound basis in fact.  Ewing v. Commissioner, 122 T.C. at 36-37; Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

2.  Petitioner Did Not Have Knowledge or Reason To Know of the Unreported Income

The first of the two negative factors relied upon by

respondent in denying equitable relief to petitioner (that petitioner "had knowledge of the unreported income") is described in Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449, in pertinent part, as follows:

> (b) Knowledge or reason to know.  A requesting spouse knew or had reason to know of the item giving rise to a deficiency * * * at the time the return was signed.

Respondent argues that "petitioner had knowledge or reason to know" of the IRA distribution when she filed the amended 1996 return on November 22, 1998.  But that is not the return that failed to reflect "the item" (in this case, the IRA distribution) with respect to which petitioner seeks equitable relief under section 6015(f).  Rather, the return omitting the IRA distribution (and which may be said to have reflected an understatement in tax) is the original 1996 return, and petitioner's undisputed testimony, also reflected in a July 25, 1999, letter from her to the Internal Revenue Service requesting innocent spouse relief, is that she did not learn of that distribution until it was discovered by her husband's accountant in connection with his preparation of the 1997 joint return in April 1998.  That was some 14 months after the original 1996 return was filed.  It is unpersuasive to argue, as does respondent, that petitioner's voluntary filing of an amended 1996 return and her attendant payment of the delinquent taxes attributable to the omission of income from the original 1996

return militate against equitable relief simply because she had to have known of the omission before she filed the amended return and made the payment. Moreover, there is no evidence that petitioner had any reason to know of the IRA distribution prior to April 1998. The distribution was from one of Louis's separate accounts, and he never discussed it with her. Therefore, we find no basis for respondent's conclusion in the notice of determination that a negative factor results because petitioner knew of the IRA distribution.

### 3. Petitioner Did Not Benefit From the IRA Distribution

The other negative factor relied upon by respondent in the notice of determination as a basis for denying equitable relief to petitioner is his finding that petitioner significantly benefited from the unreported income. See Rev. Proc. 2000-15, section 4.03(2)(c). There is no evidence in the record to support that finding. Moreover, there is evidence (discussed below) to suggest that petitioner did not benefit from the unreported income.

Respondent argues that petitioner failed to establish that she suffered "economic hardship" (a negative factor under Rev. Proc. 2000-15, sec. 4.03(2)(d), 2000-1 C.B. at 449, and that the evidence demonstrating lack of economic hardship "[supports] the determination that petitioner significantly benefitted." Respondent also states that "[p]etitioner has not provided any

evidence to establish that she did not significantly benefit."
We disagree.

First, significant benefit and lack of economic hardship are separate and distinct negative factors. Pursuant to Rev. Proc. 2000-15, section 4.03(2)(c), the existence of the former requires evidence that "[t]he requesting spouse significantly benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency." In contrast, economic hardship exists if the requesting spouse, in the absence of relief from the liability, is unable to pay his or her customary "reasonable basic living expenses." Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.[8]

As to whether petitioner enjoyed a significant benefit, there is no evidence that petitioner received <u>any</u> benefit from either the unpaid tax liability or the proceeds of the IRA distribution. She did not learn of the distribution, which occurred sometime in 1996, until April 1998. After Louis's death, she tried, unsuccessfully, to locate those funds. Moreover, she discharged the tax liability resulting from the IRA distribution, plus interest thereon, with borrowed funds that she had deposited in her own separate bank account. Nor is there any

---

[8] Rev. Proc. 2000-15, sec. 4.02(1)(c), 2000-1 C.B. at 448, provides, in pertinent part, that "the determination of whether a requesting spouse will suffer economic hardship * * * will be based on rules similar to those provided in sec. 301.6343-1(b)(4) of the Regulations on Procedure and Administration."

evidence to suggest that her financial arrangements with Louis, whereby she received $160 per week for household expenses, changed as a result of the IRA distribution.

Louis's will bequeathed his Crossland Savings Bank IRA to petitioner. That was Louis's only account at Crossland Savings Bank, and it was the source of the IRA distribution, which occurred after the bank became Republic National Bank. The record indicates that, by 1997, that account had been closed and that Louis had opened another account at Republic National Bank (the Republic account) with a different account number. As of February 2, 1997, the Republic account consisted of a $91,213 renewable CD, and the account was referred to in petitioner's innocent spouse questionnaire as containing $90,000. The February 2, 1997, CD was a 6-month CD and was a renewal of a prior CD. The existence of the Republic account CDs at least suggests that, after Louis withdrew the money from his IRA (which, as depleted by the withdrawal, he had bequeathed to petitioner), he deposited it in a new account with the same bank, which he opened after the execution of his will, and which, therefore, became part of his residuary estate bequeathed to his grandchildren.

In short, there is no direct evidence of what Louis did with the funds comprising the IRA distribution; nevertheless, we surmise that he deposited them in a bank account that, pursuant

to his will, was bequeathed to persons other than petitioner.  We
find that petitioner did not benefit from those funds.[9]

      4.   Overall Application of the Factors Under Rev.
              Proc. 2000-15, Section 4.03

We conclude from examining respondent's "Explanation of
Items" attached to the notice of determination that, in rejecting
petitioner's request for innocent spouse relief, respondent
failed to apply six of the eight factors listed in Rev. Proc.
2000-15, section 4.03.  Based upon the evidence before us (and
before respondent at the time he considered petitioner's
application for innocent spouse relief), we find that all but one
of the factors listed in Rev. Proc. 2000-15, section 4.03, are
either favorable to petitioner or neutral.

      a.  Petitioner's Marital Status

At the time petitioner requested relief, Louis was deceased.
We view that circumstance, with respect to petitioner, as
tantamount to her being separated or divorced.  Therefore, we
conclude that that factor is favorable.  See Rev. Proc. 2000-15,
sec. 4.03(1)(a).[10]

---

[9]  See Mysse v. Commissioner, 57 T.C. 680, 699 (1972), in
which we stated that, where there is an inability to trace
unreported funds attributable to one spouse, the benefit to the
other spouse cannot constitute more than ordinary support, which
means that the latter did not significantly benefit from the
funds.

[10]  See H. Conf. Rept. 105-599, at 252 n.16 (1988), 1998-3
C.B. 747, 1006, wherein the conferees, in discussing the
                                        (continued...)

b. Spousal Abuse

Louis did not abuse petitioner. Because the absence of spousal abuse is not listed as a negative factor, that factor must be considered neutral. See Rev. Proc. 2000-15, sec. 4.03(1)(c).

c. Noncompliance With Federal Income Tax Laws in Subsequent Years

Respondent concedes that "petitioner has been compliant with Federal tax laws." Because compliance with the tax law is not listed as a favorable factor, that factor must be considered neutral. See Rev. Proc. 2000-15, sec. 4.03(2)(e).

d. Legal Obligation To Pay the 1996 Tax Liability

Because neither petitioner nor Louis was legally obligated pursuant to a divorce decree or agreement to pay the tax liability resulting from the failure to report the IRA distribution, that factor is also neutral. See Rev. Proc. 2000-15, sec. 4.03(1)(e) and (2)(f).

_____

[10](...continued)
eligibility requirements for the sec. 6015(c) separate liability election, state that "a taxpayer is no longer married if he or she is widowed." See sec. 6015(c)(3)(A)(i)(I) (an individual is generally eligible to elect relief under sec. 6015(c)(1) if "such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates"). We see no reason why widows should not similarly be treated as separated or divorced from the nonrequesting spouse for purposes of Rev. Proc. 2000-15, sec. 4.03(1)(a). Cf. Jonson v. Commissioner, 118 T.C. 106, 124 (2002) (decedent spouse's marital status for purposes of sec. 6015(c)(3)(A)(i) determined at the time of death), affd. 353 F.3d 1181 (10th Cir. 2003).

e. <u>Attribution of the Unpaid Item</u>

Respondent concedes that "the full amount at issue is attributable to Louis Rosenthal." That factor is favorable. See Rev. Proc. 2000-15, sec. 4.03(1)(f), (2)(a).

f. <u>Economic Hardship</u>

Because the evidence (which consists entirely of petitioner's testimony) shows that petitioner was able to discharge her customary basic living expenses even after paying the tax liability arising from the omission of the IRA distribution from income, there was a lack of "economic hardship" as that term is defined for purposes of Rev. Proc. 2000-15, section 4.03(1)(b) and (2)(d). That factor is unfavorable.

g. <u>Knowledge or Reason To Know and Significant Benefit</u>

For the reasons previously discussed herein (section IV. B. 2. and 3.) we find that petitioner had no knowledge or reason to know of the IRA distribution, and that she did not benefit from it. Lack of knowledge or reason to know is a favorable factor (Rev. Proc. 2000-15, section 4.03(1)(d)) and, because lack of significant benefit is not listed as a favorable factor, it is considered neutral under Rev. Proc. 2000-15. However, on the basis of prior caselaw, we consider lack of significant benefit to be a favorable factor. See <u>Ewing v. Commissioner</u>, 122 T.C. at 45; <u>Foor v. Commissioner</u>, T.C. Memo. 2004-54; <u>Ogonoski v. Commissioner</u>, T.C. Memo. 2004-52; <u>Ferrarese v. Commissioner</u>,

T.C. Memo. 2002-249.

　　　5.　Conclusion

We find that, of the factors listed in Rev. Proc. 2000-15, section 4.03, four are favorable, three are neutral, and only one is unfavorable. Thus, a reasonable balancing of those factors strongly suggests that petitioner is entitled to equitable relief under section 6015(f), and that respondent's contrary conclusion constitutes an abuse of discretion. The following factors provide additional support for that conclusion:

(a) Respondent's denial of relief, as recited in the notice of determination, was based upon his application of two of the eight separate and distinct factors listed in Rev. Proc. 2000-15, section 4.03. Therefore, it is not apparent whether respondent complied with that section's requirement that "all factors * * * be considered and weighed appropriately."

(b) Respondent erroneously concluded that the two factors he did expressly consider (knowledge or reason to know and significant benefit) were unfavorable when, in fact, both were favorable.

(c) Respondent failed to take into account the fact that the understatement of income on the original 1996 return resulted from Louis's concealment of that income. Both this Court and the Court of Appeals for the Second Circuit (the court to which an appeal of this case most likely would lie) have treated as a

material factor in deciding whether to grant equitable relief under section 6015(b)(1)(D) or its predecessor section 6013(e)(1)(D)[11] "[w]hether the failure to report correctly tax liability results from 'concealment, overreaching, or any other wrongdoing' on the part of the 'guilty' spouse". Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; see also Ewing v. Commissioner, 122 T.C. at 48-49; Jonson v. Commissioner, 118 T.C. at 119.

For all of the above reasons, we hold that respondent's denial of equitable relief under section 6015(f) was an abuse of discretion and that it would be inequitable to hold petitioner liable for the underpayment of tax reflected on the original 1996 return. Therefore, petitioner is entitled to a refund of the additional tax and associated interest paid in connection with the filing of the 1996 amended return. See sec. 6015(g)(1).

To reflect the foregoing,

Decision will be entered

for petitioner.

---

[11] Cases interpreting former sec. 6013(e) remain instructive to an analysis of sec. 6015(b)(1)(D), Jonson v. Commissioner, supra, and the equitable factors we consider under sec. 6015(b)(1)(D) are the same equitable factors we consider under sec. 6015(f), Alt v. Commissioner, 119 T.C. 306, 316 (2002).