T.C. Memo. 2007-234


UNITED STATES TAX COURT


DAVID BRUCE BILLINGS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6148-03.              Filed August 16, 2007.


<u>Patrick Wiesner</u>, for petitioner.

<u>Vicki L. Miller</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HOLMES, <u>Judge</u>:  David Billings, the petitioner, began this case to be relieved from liability for the tax owed on money that his wife embezzled from her employer without his knowledge.  When this case was first before us, we dismissed it for lack of jurisdiction.  <u>Billings v. Commissioner</u>, 127 T.C. 7 (2006) (<u>Billings I</u>).  Billings appealed our decision and, while his

appeal was pending, Congress amended the Code to give us jurisdiction over cases like his. His case was remanded to us for reconsideration in light of the new law. We examine first whether the new law gives us jurisdiction. Concluding that it does, we then move on to consider the merits of his case.

FINDINGS OF FACT

The parties submitted this case for decision on stipulated facts, which means that the "Background" section of our previous opinion can now be more properly labeled "Findings of Fact." The facts are set out in greater detail in Billings I, 127 T.C. at 8-11, but to recapitulate briefly: David Billings married Rosalee in 1996. He was working at General Motors, and she was a payroll clerk at the local electric company. The Billingses kept two checking accounts, and while both were jointly held, David and Rosalee each kept almost exclusive control over one of them. In 1999, Rosalee transferred money from her employer's payroll account into the checking account that she controlled and into which she had her own pay directly deposited.

Her embezzlement continued into 2000, but Rosalee kept it secret from her husband until the company caught her. She then told her husband what she had done and hired a lawyer. By the time that she was caught, Rosalee and her husband had already filed their joint 1999 tax return, and she had left off the nearly $40,000 that she had stolen that year. Her lawyer advised

her to report the embezzlement income on an amended return because, he said, a judge would probably be more lenient in sentencing her if she took responsibility for her actions. But section 1.6013-1(a)(1) of the income tax regulations created a problem.[1] It prohibits spouses who have already filed a joint return for a particular year from filing amended returns changing their status to married-filing-separately once the deadline to file returns has passed. The due date for the Billingses' 1999 tax year--April 15, 2000--was long past, and so David signed the amended return.

That return showed an increase in taxable income, and an increase in tax of over $16,000. When David signed the amended return, he knew that neither he nor his wife expected to be able to pay this increased tax. In 2002, the Billingses filed for bankruptcy and received a discharge, which affected neither Rosalee's obligation to repay the money she'd embezzled nor her own liability for the unpaid 1999 taxes. 11 U.S.C. secs. 523(a)(1), 507(a)(8) (2000). David retired and began collecting a pension--although, as of the date the case was originally submitted, he continued to work two other jobs. He and his wife have filed timely tax returns for later years as they came due.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code and regulations in effect for the year in issue.

David asked the IRS for relief from joint liability for the unpaid 1999 tax but, in November 2002, the IRS denied his request based on "all the facts and circumstances," particularly because:

> you failed to establish that it was
> reasonable for you to believe the tax
> liability was paid or was going to be paid
> at the time you signed the amended return.

David appealed, and the IRS issued its final determination, again denying him relief because he did not believe when he signed the amended return that the tax would be paid.

David then petitioned our Court to overturn the Commissioner's determination. Such a petition is called a nondeficiency stand-alone petition--"nondeficiency" because the IRS accepted his amended return as filed and asserted no deficiency against him, and "stand-alone" because his claim for innocent-spouse relief was made under section 6015 and not as part of a deficiency action or in response to an IRS decision to begin collecting his tax debt through liens or levies. When this case was first before us, our jurisdiction over such petitions was controversial. We had first held that we did have jurisdiction, Ewing v. Commissioner, 118 T.C. 494 (2002), but then the Ninth Circuit reversed us in Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), and the Eighth Circuit followed in Bartman v. Commissioner, 446 F.3d 785, 787-788 (8th Cir. 2006), affg. in part, vacating in part T.C. Memo. 2004-93. After these two cases, we revisited the question and in Billings I followed

those circuit courts and dismissed David's case for a lack of jurisdiction.

David appealed our decision to the Tenth Circuit (he was a resident of Kansas when he filed his petition). Congress amended section 6015 to give us jurisdiction over nondeficiency stand-alone cases, and the Tenth Circuit remanded the case to us for reconsideration. We then ordered the parties to report whether the Billingses' tax liability remained unpaid, and they recently filed a stipulation agreeing that it did.

OPINION

As we summarized this part of tax law in our earlier opinion, Billings I, 127 T.C. at 11-12, a married couple who file their Federal tax return jointly are both responsible for the return's accuracy and are both jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Section 6015, however, directs the Commissioner to relieve qualifying innocent spouses from that liability under certain circumstances. Sec. 6015(a). An innocent spouse may seek relief from liability under section 6015(b) if he can show that he was justifiably ignorant of unreported income or inflated deductions. He may have his tax liability allocated between himself and an estranged or former spouse under section 6015(c). Or, like David, he may look to section 6015(f) for relief. Subsection (f) relief is available

only to a spouse who is ineligible for relief under subsections (b) and (c) and who shows that "taking into account all the facts and circumstances, it is inequitable to hold [him] liable for any unpaid tax or any deficiency (or any portion of either)."

David and the Commissioner stipulated that he did not qualify for relief under either section 6015(b) or (c) because no deficiency was ever asserted against him and his wife. They were right to do so, because both those subsections require a deficiency as a condition of relief. See, e.g., Block v. Commissioner, 120 T.C. 62, 66 (2003). That left David able to look only for equitable relief under subsection (f), and when the Commissioner denied it to him, left him with the problem of where to seek judicial review. When he first came to us, section 6015's jurisdictional provision read:

> SEC. 6015(e). Petition for Review by Tax Court.
>
> (1) In general.--In the case of an individual *against whom a deficiency has been asserted and* who elects to have subsection (b) or (c) apply--[Emphasis added.]
>
> (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed--

This was the language we construed in Billings I to require petitioners like David--*i.e.,* those filing stand-alone section

6015(f) petitions--to have had a deficiency asserted against them. But Congress amended section 6015(e) after we released Billings I to insert "or in the case of an individual who requests equitable relief under section 6015(f)" into section 6015(e). The Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 2922, 3061. The opening line of section 6015(e) now reads:

> SEC. 6015(e). Petition for Review by Tax Court.
>
> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)--

The amendment is effective for liabilities remaining unpaid on December 20, 2006. TRHCA sec. 408(c), 120 Stat. 3062. No suspense here: The parties' stipulation that David's 1999 tax liability remains unpaid assures us that we do have jurisdiction to review the Commissioner's decision to deny him relief.

We are mindful that our review of that decision is for abuse of discretion. See Butler v. Commissioner, 114 T.C. 276, 287-92 (2000). This standard does not ask us to decide whether in our own opinion we should grant relief, but whether the Commissioner, in refusing to do so, exercised his discretion "arbitrarily, capriciously, or without sound basis in fact." Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). When deciding whether to grant 6015(f) relief, the

Commissioner should take "into account all the facts and circumstances," which means that his determination rarely depends on any one factor. See sec. 6015(f); Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448. To guide IRS employees in exercising their discretion, the Commissioner has issued revenue procedures that list the factors they should consider.[2] We also use the revenue procedure when we determine whether the Commissioner abused his discretion. See, e.g., Washington v. Commissioner, 120 T.C. 137, 147-52 (2003); Jonson v. Commissioner, 118 T.C. at 125-26.

The revenue procedure begins with a list of seven conditions for equitable relief that a taxpayer must meet. Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Both parties agree that David met all of these threshold conditions. The procedure also has a safe harbor--three conditions that, if met, will ordinarily trigger a grant of relief. Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448. David does not qualify for this safe harbor, though, because one of the three conditions is that a requesting spouse be divorced or separated from the nonrequesting spouse,

---

[2] The procedure in effect when David filed his request for relief was Revenue Procedure 2000-15, 2000-1 C.B. at 447. It has since been replaced by Revenue Procedure 2003-61, 2003-2 C.B. at 296, but the new procedure applies only to requests for relief filed on or after November 1, 2003 or those pending on November 1, 2003, for which no preliminary determination letter has been issued as of November 1, 2003. Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 299.

Rev. Proc. 2000-15, sec. 4.02(1)(a), 2000-1 C.B. at 448, and David and Rosalee have remained married throughout her ordeal.

This leaves an eight-factor balancing test to decide whether relief would be "equitable."  Id., sec. 4.03.  Those factors, and the circumstances under which they are to weigh for or against relief or be treated as neutral, are easily summarized in a chart.  Here we list those factors about which the parties agree in italics.

| Weighs for Relief | Neutral | Weighs against Relief |
|---|---|---|
| No knowledge of the underpayment or item giving rise to the deficiency | | Knowledge |
| Economic hardship | | *No economic hardship* |
| No significant benefit[3] | | Significant benefit |
| | *Later compliance with Federal tax laws* | No later compliance with Federal tax laws |
| *Liability attributable to nonrequesting spouse* | | Liability attributable to petitioner |

---

[3]  Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, does not state that the absence of a significant benefit will weigh in a petitioner's favor, but only that a significant benefit will weigh against relief.  Nonetheless, we decided in Ewing v. Commissioner, 122 T.C. 32, 45 (2004), vacated 439 F.2d 1009 (9th Cir. 2006) (and other cases cited), that the absence of a significant benefit should be a positive factor for petitioners.

| Weighs for Relief | Neutral | Weighs against Relief |
| --- | --- | --- |
| Nonrequesting spouse responsible for tax under divorce decree | *No divorce decree* | Petitioner responsible for tax under divorce decree |
| Separated or divorced | *Still married* | |
| Abuse present | *No abuse present* | |

These are not the only factors that either the Commissioner or we can look at, but they are where we start.  Id.  In this case, the parties contest only two factors: knowledge and significant benefit.

A.  Knowledge

The basic problem in analyzing the Commissioner's decision that David flunks the knowledge factor is that the revenue procedure is quite unclear about when a person's knowledge should be measured.  The procedure tells us that the knowledge factor weighs *in favor of* relief when:

> In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid.  In the case of a liability that arose from a deficiency, the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency.

Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449.  The first sentence in the quoted section would seem to be the one that applies--since there's no deficiency here--and it tells us

to look at whether "the requesting spouse did not know and had no reason to know that the liability would not be paid."

But what did David not know and when did he not know it? The parties agree that David was ignorant of his wife's embezzlement when he signed the original return. They also agree that when he signed the amended return he knew about the embezzled income and that the taxes on it would not be paid.

Looking at the procedure's description of when the knowledge factor weighs *against* relief doesn't help much either. That part of the procedure tells us to ask whether a "requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed." Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449. Neither section tells us when to measure the knowledge of a requesting spouse who signed both an original and an amended return.

When the Commissioner made his determination, he assumed that the right time to measure the state of David's knowledge was when David signed the amended return, but he didn't explain his assumption. The problem for us on review is that it would have been just as reasonable for the Commissioner to measure David's knowledge when he signed the original return. If he had done so, David's conceded ignorance of the embezzled income when he signed the original return would have caused the Commissioner to find

that the knowledge factor weighed in David's favor.  We thus need to look elsewhere to decide at which time the Commissioner should have measured David's knowledge.

The first place we look is at a case where a wife who requested relief didn't know about an IRA distribution that her husband failed to report when she signed the original return.  She learned about the distribution only after her husband's death, and then filed an amended return that corrected the omission.  In that case, the Commissioner also measured her knowledge at the time she signed the amended return.  We found his determination to be an abuse of discretion because:

> It is unpersuasive to argue, as does respondent, that petitioner's voluntary filing of an amended 1996 return and her attendant payment of the delinquent taxes attributable to the omission of income from the original 1996 return militate against equitable relief simply because she had to have known of the omission before she filed the amended return and made the payment.

Rosenthal v. Commissioner, T.C. Memo. 2004-89.

We acknowledge that in Rosenthal the requesting spouse paid the taxes she owed on the omitted income when she filed her amended return, but we find that this fact does not distinguish David's case--in both cases the innocent spouses were ignorant of the key facts at the time they signed the original return.

A second place we can look to for help is in section 6015(b).  That section gives relief when a spouse is reasonably

ignorant of an understatement of tax that gives rise to a deficiency.  Indeed, the Commissioner argues here that:

> Instead of filing an amended return, [Rosalee] could have contacted respondent and informed him of the unreported embezzlement income.  Once informed, respondent could have proceeded with examination procedures and [Rosalee] could have agreed to respondent's determination of additional tax.

Resp. Br. at 30.  This would have led to the determination of a deficiency and presumably allowed David to file a successful request for relief under section 6015(b).  See, e.g., Haltom v. Commissioner, T.C. Memo. 2005-209 (ignorance of embezzlement income).

It would seem a trap for the unwary--and an inefficient requirement from the IRS's perspective--to require spouses to go through an audit whose outcome is preordained in a situation like that faced by the widow Rosenthal or Mr. Billings, rather than fess up by filing an amended return.

Tax law is of course filled with such traps and has never been viewed as a garden of efficiency, but Congress itself has directed the Commissioner--at least in this area--to take a somewhat more open-ended view of the law.  Section 6015(f) directs him to consider "all the facts and circumstances."  The revenue procedure likewise counsels the Commissioner's employees that, in weighing an application for relief, "No single factor will be determinative of whether equitable relief will or will

not be granted in any particular case.  Rather, all factors will be considered and weighed appropriately.  The list is not intended to be exhaustive."  Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

We conclude from this that, in choosing an interpretation of the knowledge factor that was unexplained, "unpersuasive" (as we called it in Rosenthal), and seemingly contrary to the Commissioner's own interest in having taxpayers amend their returns when they discover their spouses' misreporting, the Commissioner was acting arbitrarily and so abused his discretion. We therefore find that the knowledge factor in this case weighs in favor of relief, not against it.

B.   Significant Benefit

The second contested factor is whether David "significantly benefited (beyond normal support) from the unpaid liability or items giving rise to the deficiency."  Rev. Proc. 2000-15, sec. 4.03(2)(c), 2000-1 C.B. at 448-49.  A spouse's benefit exceeds "normal support" when the money in question was used to pay for a child's education, Jonson, 118 T.C. at 119-20, or special purchases for the couple or their children, Alt v. Commissioner, 119 T.C. 306, 314 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004), or for unusually frequent travel, Barranco v. Commissioner, T.C. Memo. 2003-18 (lifestyle as a whole, which included several European vacations, was a significant benefit).

We must examine whether David benefited from either the embezzlement income itself or from not paying the taxes on that income. If he did significantly benefit, the factor weighs against relief; otherwise (under our precedents), it weighs in his favor. See supra note 3.

The Commissioner argues that David significantly benefited from his wife's embezzlement because it allowed them to continue their free-spending lifestyle, and still have the means to buy a larger house in 2000, the year the embezzlement ended. He also points out that the spending did not stop after Rosalee's employer discovered the embezzlement, and that the Billingses even bought three new vehicles after she was discovered. David counters that it wasn't Rosalee's embezzlement that supported their lifestyle--it was the two paychecks he earned and the liberal use of his credit cards.

To determine whether the Commissioner erred on this point we can trace the embezzlement income to see where it was spent and by whom. Looking first to see where the money went, in 1999, Rosalee deposited $71,100 into her account and withdrew about $67,500. Of her withdrawals, $7,200 went into a savings account she shared with David, $4,100 went toward her car, and $7,500 went toward her credit cards. While some of the remaining $48,700 paid for their basic living expenses, David received little marginal benefit from his wife's extra cash. She spent

most of it on small-money items that benefited only her.  She also gave some of the money to her children and her ex-husband. Of the $7,200 she put into their joint savings account in 1999, David withdrew about $1,670.  But in their life--a life where they chose to spend nearly all their legitimate 1999 income of $100,000--this extra income was not "significant".

We also ask whether David significantly benefited from not paying the tax.  See Rev. Proc. 2000-15, sec. 4.03(2)(c), 2000-1 C.B. at 448; Mellen v. Commissioner, T.C. Memo. 2002-280.  Here, we think it is important that the Billingses filed for bankruptcy under chapter 7 in May 2002.  Chapter 7 required them to liquidate all of their nonexempt assets, and turn that money over to a trustee.  Rosalee's tax debt was not dischargeable, however, and so she will continue to owe the IRS until that debt (which the parties stipulated was close to $30,000 by the end of 2006) is paid in full.  We therefore do not consider David to have this unpaid tax money available for his personal use, and we find that the Commissioner clearly erred when he found that David significantly benefited from the partial nonpayment of the Billingses' 1999 taxes.

Based on our findings, the chart looks like this:

| Weighs for Relief | Neutral | Weighs against Relief |
|---|---|---|
| No knowledge of the embezzled funds at the time the original return was filed | | |
| | | No economic hardship |
| No significant benefit | | |
| | Later compliance with Federal tax laws | |
| Liability attributable to nonrequesting spouse. | | |
| | No divorce decree | |
| | Still married | |
| | No abuse present | |

Thus, of the eight factors described in the revenue procedure, three weigh toward relief, five are neutral, and only one weighs against relief. David's mere lack of economic hardship being too thin a justification for denying him relief, we conclude that the Commissioner abused his discretion in denying David relief, and

Decision will be entered

for petitioner.