T.C. Memo. 2011-284

UNITED STATES TAX COURT

MARY E. HAGGERTY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15589-09.              Filed December 5, 2011.


        P filed a joint Federal income tax return with her
husband (H) for the 2006 tax year.  Following H's
death, P seeks relief from joint and several liability
under sec. 6015(f), I.R.C., with respect to the 2006
tax liability.

        <u>Held</u>:  P is not entitled to relief from joint and
several liability pursuant to sec. 6015(f), I.R.C.,
with respect to her 2006 tax year.


<u>John Leeper</u>, for petitioner.

<u>Jeffrey D. Heiderscheit</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case arises from a petition for judicial review of respondent's determination denying relief from joint and several liability under section 6015 for the 2006 taxable year.[1]  The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for the 2006 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and the accompanying exhibits are hereby incorporated by this reference.  At the time she filed her petition, petitioner resided in Texas.

Petitioner and Timothy Haggerty (Mr. Haggerty) married in 1968.  Mr. Haggerty unexpectedly passed away on September 13, 2006, and he did not leave a will.

Petitioner is a licensed vocational nurse and for the last 20 years has worked at Thomas Medical Associates.  Petitioner and Mr. Haggerty had a tumultuous relationship during which he verbally abused her.

Petitioner and Mr. Haggerty used a joint checking account in which her paycheck was directly deposited by her employer.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner paid all household bills out of this account. Twice a month Mr. Haggerty deposited between $500 and $550 into the joint checking account. Petitioner did not know what Mr. Haggerty did with the rest of his paycheck. When she inquired, Mr. Haggerty became angry and told her that it was his money which he used to pay his bills. Petitioner explained that Mr. Haggerty "was very secretive about his money and about you don't question him. That's what he used to tell me. Don't question me." Mr. Haggerty liked to gamble.

On June 29, 1977, petitioner and Mr. Haggerty purchased a house for $43,500 and paid $15,000 as a downpayment and financed $28,500 of the purchase price with a 30-year mortgage. Petitioner made the mortgage payments out of the joint checking account each month. On October 21, 2004, petitioner and Mr. Haggerty took out a second loan against the house of $70,952. Petitioner did not want the second loan, nor did she directly benefit from any of its proceeds. On April 17, 2006, the first loan against the house was paid off and the first mortgage was released.

On July 25, 2006, the second mortgage was paid in full and the lien against the house was released. Because Mr. Haggerty had been making the second mortgage monthly payments, petitioner did not know until shortly before his death that he had paid off the second mortgage. When she confronted Mr. Haggerty about how

he was able to do this, petitioner become distressed when he told her that he had used a portion of his retirement funds. Mr. Haggerty did not ask petitioner's permission to withdraw part of his retirement funds, nor did she participate in the decision.

Mr. Haggerty retired at the end of 2005 but received Form W-2, Wage and Tax Statement, for 2006 which reported $19,735.93 of income from the payment for his accumulated leave. Mr. Haggerty began receiving distributions from his retirement plan accounts in 2006 and continued to deposit between $500 and $550 twice a month into the joint account for household expenses. Petitioner did not receive any additional funds from Mr. Haggerty's retirement plan distributions.

After Mr. Haggerty's death, petitioner became aware of an account at the Government Employees Credit Union. She also learned that Mr. Haggerty owed money to this credit union, which informed her it would exercise its setoff rights and take the money from Mr. Haggerty's account if she did not pay the bill. Petitioner paid the credit union, and she sent the Internal Revenue Service the entire balance of this account with her 2006 tax return. She also became aware of an account at El Paso Employees Federal Credit Union which no longer had a balance but showed that a $7,404.65 loan had been repaid on April 6, 2006. Petitioner received Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance

Contracts, etc., after Mr. Haggerty's death.  She did not know what to do with them, found them threatening, and hid them in a cabinet.

In early 2007 petitioner gathered all of the documents she could find and hired an accountant, Michael L. Schmidt of Schmidt, Nugent, Gano & Co., P.C., to prepare her tax return. Mr. Schmidt prepared a joint return without asking petitioner how she wished to file.  Petitioner assumed that was correct because she had always filed joint returns.  Petitioner became distraught when Mr. Schmidt informed her how much she owed; she did not know that she would be liable for $25,343 in tax.  Petitioner signed and timely filed a joint Form 1040, U.S. Individual Income Tax Return, for the 2006 tax year, reporting taxable income of:[2]

| Source | Income |
| --- | --- |
| Form W-2 to petitioner, Thomas Medical Associates | $46,105 |
| Form W-2 to Mr. Haggerty, City of El Paso | 19,736 |
| Interest | 165 |
| IRA distributions | 67,726 |
| El Paso Firemen's Pension Fund | 20,281 |
| El Paso Firemen's Pension Fund | 40,835 |
| ING Life Ins. & Annuity Co. | 53,500 |
| Gambling winnings | 2,900 |
| Total | 251,248 |

[2]All values have been rounded to the nearest dollar amount.

On the return petitioner reported a tax liability of $57,636, withholding credits of $28,533, estimated tax payments of $3,720, and a total tax due of $25,343. Petitioner included only $5,300 with the return. At the time petitioner filed the return she knew that there was a large amount due and that she did not have the money to pay it.

Petitioner filed a Form 8857, Request for Innocent Spouse Relief, which respondent received on February 19, 2008. On this form petitioner stated that "My deceased husband received 1099s after his death reflecting his pension and annuity income for the year 2006. I was shocked when I saw the 1099s because I had no idea he had received that much money and there wasn't enough money to pay the tax." On her request petitioner reported monthly income of $8,682 and monthly expenses of $7,147. Of this income $5,350.96 per month comes from Mr. Haggerty's retirement plan distributions.

On March 26, 2009, respondent sent petitioner a final Appeals determination denying her request for relief from joint and several liability for the 2006 tax year. On June 26, 2009, petitioner filed a timely petition with this Court contesting the adverse determination.

OPINION

In general, married taxpayers may elect to file a joint income tax return. Sec. 6013(a). A surviving spouse may elect

to file a joint return with a deceased spouse for the taxable year of the deceased spouse's death. Sec. 6013(a)(3). After making the election, each spouse generally is jointly and severally liable for the entire Federal income tax liability for that year, whether as reported on the joint income tax return or subsequently determined to be due. Sec. 6013(d)(3); see sec. 1.6013-4(b), Income Tax Regs. A spouse or former spouse may petition the Commissioner for relief from joint and several liability in certain circumstances. See sec. 6015(a).

The Commissioner may relieve a spouse or former spouse from joint and several liability if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency and relief is not available to such individual under section 6015(b) or (c).[3] Sec. 6015(f). We have held that the applicable standard of review is de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009). Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a). The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296.

---

[3]Petitioner seeks relief from a liability she reported on her return, and therefore she is ineligible for relief under sec. 6015(b) or (c). See Washington v. Commissioner, 120 T.C. 137, 146 (2003).

I.   Threshold Conditions

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f).  Respondent concedes that petitioner satisfies the seven threshold conditions.

II.  Safe Harbor Conditions

If the threshold conditions are met, the Commissioner ordinarily will grant equitable relief under section 6015(f) with respect to an underpayment of income tax reported on a joint Federal income tax return, provided the following three safe harbor conditions are satisfied:  (i) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (ii) on the date the requesting spouse signed the joint income tax return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (iii) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief.  Id. sec. 4.02, 2003-2 C.B. at 298.

On the date that petitioner signed the joint income tax return, she knew that Mr. Haggerty was deceased and would not pay the tax liability.  See George v. Commissioner, T.C. Memo. 2004-261 (holding that the requesting spouse had knowledge that the

nonrequesting spouse would not pay the tax liability because the nonrequesting spouse was deceased at the time the requesting spouse filed the joint return showing an amount due).  Therefore she does not satisfy the second condition.  Accordingly, because petitioner does not meet all the requirements of the safe harbor, she does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

III. Facts and Circumstances Test

A requesting spouse, such as petitioner, who satisfies the threshold conditions but fails to satisfy the safe harbor conditions under Rev. Proc. 2003-61, sec. 4.02, is nevertheless eligible for relief under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for an underpayment.  Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, lists various nonexclusive factors to be considered in deciding whether to grant equitable relief under section 6015(f).  No single factor is determinative, all factors are to be considered and weighed, and the list of factors is not intended to be exhaustive.  Id. The original Appeals officer found four of the following factors weighed against relief and two weighed for relief.  Our analysis of the relevant factors and circumstances is as follows.

A.    Marital Status

When petitioner requested relief, Mr. Haggerty was deceased.
"We view that circumstance, with respect to petitioner, as
tantamount to her being separated or divorced.  Therefore, we
conclude that that factor is favorable."  Rosenthal v.
Commissioner, T.C. Memo. 2004-89; see also Capehart v.
Commissioner, T.C. Memo. 2004-268, affd. 204 Fed. Appx. 618 (9th
Cir. 2006); George v. Commissioner, supra.

We note that the Appeals officer found that this factor
weighed against relief, in direct contradiction with this Court's
opinions.  At worst petitioner's widowhood may be a neutral
factor, but we find it completely untenable that this factor
weighs against relief.

B.    Economic Hardship If Relief Were Denied

The second factor under Rev. Proc. 2003-61, sec. 4.03, is
whether the requesting spouse will suffer economic hardship if
relief is not granted.  Economic hardship for these purposes is
defined as the inability to pay reasonable basic living expenses
if the requesting spouse is held liable for the tax owed.  See
sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  The ability to pay
reasonable basic living expenses is determined by considering
inter alia the following nonexclusive factors:  The taxpayer's
age, employment status, ability to earn, and number of
dependents; the amount reasonably necessary for food, clothing,

housing, medical expenses, and transportation; and any extraordinary circumstances. Id.

On her request for relief, petitioner reported monthly income of $8,682 and monthly expenses of $7,147. Although petitioner explained that her income was decreasing because new medical technology made some of her services obsolete, she owns her own home free and clear of any mortgages and has no delinquent accounts. We also note that petitioner included in her monthly expenses $1,094.03 for "withholding from pension". At trial she explained that this was because "I started having a little bit more taken out of the pension and from my checks, just so I won't be in the position of paying taxes to the IRS." This factor weighs against petitioner because we find that she would not suffer economic hardship if relief was not granted.

C.  Knowledge or Reason To Know That the Nonrequesting Spouse Would Not Pay the Income Tax Liability

The third factor under Rev. Proc. 2003-61, sec. 4.03, is whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability. When determining whether the requesting spouse had reason to know, among other things, we consider "the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters". Rev. Proc. 2003-61, sec. 4.03(iii)(C). Petitioner did not know of Mr. Haggerty's

income at the time he received it and was not involved in the income-generating activity or the expenditure of most of these funds. She was, however, benefited by the expenditure of a large portion of the funds to pay off the second mortgage encumbering their home on July 26, 2006, shortly before Mr. Haggerty's death.

Petitioner knew of the tax liability at the time the return was filed; therefore, this factor weighs against relief.

D. Nonrequesting Spouse's Legal Obligation To Pay the Outstanding Liability

Because petitioner and Mr. Haggerty never divorced, this factor is neutral. Respondent's Appeals officer found that this factor weighed against relief. Customarily we find that this factor is neutral if it does not weigh in favor of relief. See Akopian v. Commissioner, T.C. Memo. 2011-237; Bland v. Commissioner, T.C. Memo. 2011-8 (this factor was found to be neutral because the taxpayer was widowed).

E. Significant Economic Benefit

A fifth factor is whether the requesting spouse received a significant economic benefit from the unpaid income tax liability in excess of normal support. Petitioner did receive a significant economic benefit when Mr. Haggerty paid off the substantial second mortgage against their home. She also receives significant income each month from his remaining retirement plan distributions.

We note the similarities of this case to <u>Cheshire v.</u>
<u>Commissioner</u>, 115 T.C. 183 (2000), affd. 282 F.3d 326 (5th Cir.
2002).  In <u>Cheshire</u> the requesting spouse's husband received
retirement plan distributions and used part of the withdrawn
funds to pay off their mortgage of $99,425.  <u>Id.</u> at 185-186.  In
this case, there does not appear to be an underlying attempt to
avoid the tax collector as there was in <u>Cheshire</u>.  We find that
this factor weighs against petitioner.

F.    <u>Subsequent Compliance With Income Tax Laws</u>

A sixth factor is whether the requesting spouse made a good-
faith effort to comply with Federal income tax laws in subsequent
years.  At trial petitioner credibly explained that she has
complied with all Federal income tax laws since 2007.  This
factor weighs in favor of petitioner.

G.    <u>Abuse</u>

A seventh factor is abuse of the requesting spouse.  Mr.
Haggerty was an imposing man who was secretive about his money.
He occasionally verbally abused petitioner and would get angry if
she ever asked about his money.  Although of concern, there is
not enough evidence to find that this factor weighs in favor of
petitioner.  It is neutral.

H.    <u>Poor Health When Signing the Return or Requesting</u>
<u>Relief</u>

The final factor is whether the requesting spouse was in
poor health when signing the return or requesting relief.  The

record does not indicate that petitioner was in poor health when she signed the 2006 joint income tax return.  Therefore, this factor is neutral.

IV.  Conclusion

As indicated by the foregoing analysis, three factors are neutral.  Two of the factors--marital status and compliance with Federal income tax laws--favor relief.  Three of the factors--economic hardship, the more important factor knowledge or reason to know, and significant benefit--weigh against relief.  After weighing the testimony and other evidence, we conclude that petitioner is not entitled to equitable relief for the tax year at issue.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

for respondent.