T.C. Memo. 2012-91

UNITED STATES TAX COURT

RAJALAKSHMI SRIRAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11776-08.                    Filed March 27, 2012.

<u>Jonathan P. Decatorsmith</u> and Ariel Erbacher (specially recognized), for

petitioner.

<u>Mayer Y. Silber</u>, <u>Grubert R. Markley</u>, and <u>Robert M. Romashko</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court under section 6015(e)(1) in

response to a notice of determination denying her request for relief from joint and

several liability under section 6015.[1]  The issue to be decided is whether petitioner

is entitled to equitable relief from joint and several liability under section 6015(f) for

tax related to a 2000 joint Federal income tax return.[2]  We hold she is not.

## FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts

and accompanying exhibits are incorporated herein by this reference.  Petitioner

resided in Illinois when she petitioned the Court.

Petitioner was born in 1960 in Kumbakonam, India.  She graduated from a

high school in India and has taken some college-level courses in the United States.

Although petitioner's native language is Tamil, she began taking English classes in

India in the first grade.  She first emigrated from India to the United States in 1983,

at which time she settled with her uncle's family in the suburbs of Chicago, Illinois

(Chicago).

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code, and Rule References are to the Tax Court Rules of Practice and Procedure.

[2]Although petitioner asserts in the petition that she is entitled to relief under
sec. 6015(c), we deem that issue conceded because it was not addressed at trial or
on brief.  See Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).  In any
event, petitioner is ineligible for relief under that subsection because she seeks relief
from an underpayment of tax and not an assessed deficiency.  See sec. 6015(c)(1);
Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).

After living and working in the United States during 1983 and through part of 1985, petitioner returned to India to marry Krishnaswami Sriram (Dr. Sriram) in a marriage arranged by their families. Petitioner and Dr. Sriram (collectively, the Srirams) have been married for more than 25 years, and they were married as of the date of the trial in this case. The Srirams have three children who, at the time of the trial in this case, were 18, 22, and 23 years old, respectively. At least two of those children are college educated.

Over the years, petitioner has demonstrated at least a basic proficiency in the English language. She earned a letter grade of B in a data processing and word processing course taught in English, and she received passing grades in English-taught courses at Moraine Valley Community College. Between 1983 and 1985 she worked at the State Bank of India, as an office employee with Makita Corp., and as an attorney's assistant. Petitioner speaks to her children in Tamil, and she understands them when they speak to her in English. Although petitioner used a Tamil-English translator at trial, she often (but not always) understood questions asked of her in English, and she responded mostly in English during direct and cross examination.

The Srirams lived in India until approximately 1987 when they moved to the United States. Dr. Sriram worked as a medical doctor, and petitioner

established herself as the family's homemaker. By 2000 Dr. Sriram practiced medicine through a limited liability company and a sole proprietorship which generated aggregate gross income of more than $1 million in that year. Petitioner did not work outside the home from 1988 through at least 2000.

The Srirams had accumulated financial wealth throughout their marriage, though the record is scant concerning their finances at the time of trial. In 1995 they purchased a home in Lake Forest, Illinois, for $600,000 (Lake Forest residence), and by 2000 they jointly owned that property free and clear of any mortgages. In 2000 they jointly owned rental properties in Arlington, Illinois, and Peekskill, New York (Peekskill property) (collectively, rental properties).[3] They jointly owned a certificate of deposit (CD) which was worth approximately $3.3 million in 2000. In 2007 they purchased a car for $30,000 cash.

Dr. Sriram controlled most (if not all) of the family's finances at all relevant times. Petitioner purchased household items such as groceries using joint funds or credit cards. She was not aware of the family's credit card balances, but charges

---

[3]Although petitioner testified at trial that she may or may not have owned the Peekskill property, we conclude that she did on the basis of statements in the notice of determination that she reported rental income from that property on her Federal income tax returns for 2001 through 2005.

to those cards were always accepted. At Dr. Sriram's direction, petitioner handled basic banking activities such as making deposits and withdrawals.

In or around November 2000 Dr. Sriram was indicted in the U.S. District Court for the Northern District of Illinois for, in addition to other offenses, criminal tax fraud for 1997 through 1999. He was subsequently enjoined from practicing medicine, and the Srirams' assets were frozen by court order. While the record is clear that the United States seized certain assets belonging to the Srirams, it is not clear as to which assets were seized or in what amounts. Neither the Lake Forest residence nor the rental properties were seized by the United States, and regardless of the seizure, the Srirams continued to receive financial assets in the form of a monthly allowance apparently paid by Dr. Sriram's attorneys.

In October 2001 the Srirams signed and filed a joint 2000 Federal income tax return (2000 return) that a certified public accountant had prepared. The 2000 return reported net business income of $1,345,965 from Dr. Sriram's medical practice, interest income of $188,366 from joint bank accounts, and total rental income of $23,090. It also reported tax due of $656,491 and an addition to tax for failing to pay estimated income tax of $33,507. The Srirams remitted $100 with the 2000 return. They also attached a statement explaining that they could not pay the tax due because a court had ordered their assets frozen and prohibited Dr. Sriram

from practicing medicine. The statement reported that each of the Srirams was the subject of an ongoing criminal investigation and that they had provided thousands of pages of documents relating to the Srirams' personal finances and Dr. Sriram's medical practice.

Petitioner filed with respondent a Form 8857, Request for Innocent Spouse Relief, seeking equitable relief under section 6015(f) for 1997 through 2000.[4] An affidavit attached to the Form 8857 and stipulated by the parties offered numerous reasons why petitioner did not believe that divorcing Dr. Sriram was a viable alternative. The affidavit also asserted that petitioner and her children would suffer financial hardship if she was not granted innocent spouse relief.

On February 12, 2008, respondent's Office of Appeals (Appeals) issued to petitioner a notice of determination denying her request for relief under section 6015(b), (c), and (f). Appeals explained its decision in a Form 886-A, Explanation of Items,[5] and evaluated petitioner's equitable relief claim under the guidelines set

---

[4]Petitioner filed with respondent two Forms 8857; the first dated June 24, 2002, and the second dated July 15, 2004. The parties agree that the request was timely, and we refer to the later filed Form 8857 for purposes of our discussion.

[5]The notice of determination stated that Appeals explained its decision in an enclosed Form 5278, Appeals Audit Statement. However, the parties stipulated that Appeals explained its determination in Form 886-A. We consider the notice of determination's reference to Form 5278 a typographical error.

forth in Rev. Proc. 2003-61, 2003-2 C.B. 296. In relevant part, Appeals found that petitioner would not suffer economic hardship if she was held liable for the unpaid tax. In support thereof, an individual in Appeals (settlement officer) examined the Srirams' financial records.

The settlement officer noted that the Srirams earned interest income in each of the years 1999 through 2005 of $48,326, $187,700, $97,925, $31,461, $18,169, $18,893, and $36,134, respectively. The settlement officer also found that, in each of the years 2000 through 2004, the Srirams deposited cash (net of interaccount transfers and nontaxable items) of $37,765, $89,154, $143,037, $130,421, and $114,745, respectively. The settlement officer determined that in addition to various money market, retirement, and bank accounts, the Srirams owned a CD with a 2004 yearend balance of $1,253,825. Finally, the settlement officer found that the rental properties generated net rental income or loss (inclusive of rental expenses and depreciation expense) of $23,090, $21,120, $3,093, $6,166, ($7,817), and $1,485 in each of the years 2000 through 2005, respectively.

For each of the years following Dr. Sriram's indictment, petitioner filed Federal income tax returns electing married filing separately status. She has mostly been in compliance with her Federal income tax obligations since 2000, though we note that the Form 886-A stated that she filed her 2001 Federal income

tax return late. Petitioner petitioned the Court, and a trial of this case was held in Chicago on May 19, 2011. At the time of trial, petitioner was employed with the Circuit Court of Cook County (Cook County), earning an annual salary of $33,000. She and Dr. Sriram resided in separate areas of the same house.

OPINION

A husband and wife generally may elect to file a joint Federal income tax return. Sec. 6013(a). After making such an election, each spouse becomes jointly and severally liable for the tax due on the spouses' aggregate income. See sec. 6013(d)(3). An individual who has made a joint return may elect to seek relief from joint and several liability under subsections (b), (c), and (f) of section 6015. Sec. 6015(a), (f). Where the Commissioner denies a requesting spouse equitable relief under section 6015(f), that individual may petition the Court to determine the appropriate relief available, as petitioner has done. Sec. 6015(e)(1)(A). We determine whether a taxpayer is entitled to equitable relief de novo, see id.; Porter v. Commissioner, 132 T.C. 203, 210 (2009), and petitioner bears the burden of proving her entitlement to such relief, see Rule 142(a).[6]

---

[6]Respondent asserts on brief that, notwithstanding our decision in Porter v. Commissioner, 132 T.C. 203 (2009), the settlement officer's determination should be reviewed for abuse of discretion. In Porter, a Court-reviewed Opinion, we held that the scope and standard of our review in cases requesting equitable relief from

(continued...)

A requesting spouse who is unable to qualify for relief under section 6015(b) or (c) may nonetheless avoid joint and several liability if, taking into account all the facts and circumstances, it is inequitable to hold that individual liable for any unpaid tax or deficiency. Sec. 6015(f)(1). Because petitioner is ineligible for relief under subsection (b) or (c) of section 6015, we decide only whether she is entitled to relief under section 6015(f). We hold she is not.

Pursuant to his grant of authority under section 6015(f), the Commissioner has fashioned guidelines for determining whether an individual qualifies for equitable relief in Rev. Proc. 2003-61, supra.[7] The Court considers these guidelines in the light of the attendant facts and circumstances to determine whether equitable

---

[6](...continued)
joint and several income tax liability are de novo. Id. at 210. We see no reason to disturb our holding in Porter, and we adopt the reasoning therein insofar as we review petitioner's entitlement to equitable relief de novo.

[7]On January 5, 2012, respondent released Notice 2012-8, 2012-4 I.R.B. 309, concerning a proposed revenue procedure that, if finalized, would revise the factors to be examined in determining the requesting spouse's claim for equitable relief under sec. 6015(f). Among other changes, the proposed revenue procedure expands the effect of the nonrequesting spouse's abuse and/or financial control on a requesting spouse's entitlement to equitable relief. Id. We continue to apply the factors in Rev. Proc. 2003-61, 2003-2 C.B. 296, in view of the fact that the proposed revenue procedure is not final and because the comment period under the notice only recently closed. Because our holding does not turn on any single factor as revised in the proposed revenue procedure, we call attention to the effect (if any) of a revised factor only where we deem it necessary to do so for clarity.

relief is appropriate, but is not bound by them.  See Pullins v. Commissioner, 136

T.C. 432, 438-439 (2011); McGhee v. Commissioner, T.C. Memo. 2010-259, 100

T.C.M. (CCH) 473, 474 n.8 (2010).  The guidelines begin by establishing threshold

requirements that, the Commissioner contends, must be satisfied before an equitable

relief request should be considered.  See Rev. Proc. 2003-61, sec. 4.01, 2003-2

C.B. at 297-298.  They next set forth certain safe harbor conditions which, if met,

may result in a grant of equitable relief.  See id. sec. 4.02, 2003-2 C.B. at 298.

Finally, they provide a nonexclusive list of factors that should be considered in

determining whether section 6015(f) relief is proper.  See id. sec. 4.03, 2003-2 C.B.

at 298-299.

I.      Threshold Conditions

Rev. Proc. 2003-61, sec. 4.01, sets forth seven threshold conditions that a

requesting spouse must satisfy before a request for relief under section 6015(f)

will be considered.  Those conditions are:  (1) the requesting spouse filed a joint

return for the taxable year for which relief is sought; (2) relief is not available to

 the requesting spouse under section 6015(b) or (c); (3) the requesting spouse

applies for relief no later than two years after the date of the Internal Revenue

Service's first collection activity with respect to the taxpayer that occurs after July

22, 1998;[8] (4) the spouses did not transfer assets between themselves as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.

Respondent concedes that petitioner meets the first six conditions, but asserts that she only partially satisfies the last enumerated condition; i.e., that the liability from which relief is sought is attributable to an item of the nonrequesting spouse. According to respondent, 50% of the interest income from the Srirams' jointly held bank accounts and of the rental income from the rental properties is attributable to petitioner. Petitioner, on the other hand, asserts that those items are attributable solely to Dr. Sriram because they were purchased or funded with income from his medical practice.[9] Although petitioner does not explicitly claim

---

[8]Notice 2012-8, sec. 3.01, 2012-4 I.R.B. at 311, eliminates the two-year deadline to request equitable relief and replaces it with the period of limitations provided by sec. 6502 (relating to collection) or sec. 6511 (relating to filing a claim for credit or refund). Our analysis is unchanged by this revision given the parties' stipulation that petitioner's request was timely.

[9]As discussed infra p. 23, petitioner asserts that Dr. Sriram abused her physically at some point between 1995 and 2000. She does not assert, nor do we

(continued...)

entitlement to the nominal ownership exception contained in Rev. Proc. 2003-61, sec. 4.01(7)(b), 2003-2 C.B. at 297, we understand her to do so according to the context of her argument.

Rev. Proc. 2003-61, sec. 4.01(7)(b), creates a rebuttable presumption that an item titled in the requesting spouse's name is attributable to that spouse.  Through an example, the revenue procedure provides that the presumption of ownership may be rebutted by showing (1) fraudulent conduct on the part of the nonrequesting spouse with respect to the requesting spouse, (2) that the requesting spouse did not fund the disputed item, and (3) that the requesting spouse did not hold himself or herself out as owning the disputed item.  See id.  We are not persuaded that petitioner has rebutted the presumption of ownership.

---

[9](...continued)
conclude, that the alleged abuse made her fearful of retaliation such that she would not have questioned the treatment of items reported on the 2000 return and attributable to her.  See Thomassen v. Commissioner, T.C. Memo. 2011-88, 101 T.C.M. (CCH) 1397, 1405 (2011); Rev. Proc. 2003-61, sec. 4.01(7)(d), 2003-2 C.B. at 298.  The Commissioner now provides that equitable relief may be granted where the requesting spouses establishes that he or she was the victim of abuse before the return was signed even though the underpayment of tax is attributable, in part or in full, to an item of the requesting spouse.  See Notice 2012-8, sec. 4.02(d), 2012-4 I.R.B. at 312.  Petitioner would not be eligible for relief under the proposed revenue procedure because, as we find, she has failed to meet her burden of proving that she was a victim of abuse.

First, petitioner did not prove that Dr. Sriram acted fraudulently towards her with respect to the rental or interest income reported on the 2000 return. Second, she failed to prove that she did not contribute to the purchase of the rental properties or otherwise fund the jointly held bank accounts through, for example, her personal savings or familial gifts. Third, she did not prove her lack of involvement in managing the rental properties or in performing banking activities with respect to the bank accounts. Petitioner has failed to persuade us that income relating to the rental properties and the bank accounts is not attributable to her. We hold that petitioner is not eligible for equitable relief from joint and several liability on the underpayment of tax arising from items allocable to her; namely, her share of the rental and interest income, $105,728.[10] We next decide whether petitioner is entitled to relief from joint and several liability on the portion of the underpayment allocable to Dr. Sriram; namely, all of the income from his medical practice, $1,345,965, and one-half of the rental and interest income, $105,728.

II.     Safe Harbor Conditions

Where the threshold conditions are met, equitable relief with respect to an underpayment of tax reported on a joint return may be granted where each of three

---

[10]Calculated as one-half of the interest income ($188,366 divided by 2, or $94,183), plus one-half of the rental income ($23,090 divided by 2, or $11,545).

safe harbor conditions is met. These conditions are: (1) when the relief is requested, the requesting spouse is no longer married to or is legally separated from the nonrequesting spouse or has not been a member of the same household as the nonrequesting spouse at any time during the 12 months before the request for relief; (2) when the requesting spouse signed the joint return, he or she did not know or have reason to know that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.02. As we discuss below, petitioner fails to meet any of these safe harbor conditions.

III.     Facts and Circumstances Test

Our statutory charge under section 6015 is to determine whether a taxpayer is entitled to equitable relief on the basis of all the facts and circumstances. We review a claim for equitable relief under section 6015(d) de novo. See Porter v. Commissioner, 132 T.C. at 210. Where a requesting spouse satisfies each of the threshold requirements but fails to satisfy the safe harbor conditions under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse is nevertheless eligible for equitable relief under section 6015(f) if, taking into account all of the facts and circumstances, it is inequitable to hold the requesting spouse liable for an underpayment. Sec. 6015(f). Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-

299, lists eight nonexclusive factors to consider in determining whether it is inequitable to hold the requesting spouse liable for all or any part of the unpaid tax. No single factor is determinative; rather, all factors are weighed in the light of the surrounding facts and circumstances to determine whether equitable relief is appropriate. Id. sec. 4.03(2).

1.    Marital Status

The first factor to be weighed is whether the requesting spouse is legally separated, living apart, or divorced from the nonrequesting spouse. Id. sec. 4.03(2)(a)(i). The Srirams have been married continuously since 1985, and they have resided together in the same house. The fact that petitioner and Dr. Sriram lived in separate areas of the same residence is, despite petitioner's insistence, inconsequential because a husband and wife who reside in the same house are considered members of the same household. Cf. sec. 1.6015-3(b)(3)(ii), Income Tax Regs. (relating to proportionate relief under section 6015(c)); Notice 2012-8, sec. 4.03(2)(a)(iv), 2012-4 I.R.B. at 313 (spouses are considered members of the same household for any period in which they maintain the same residence). This factor weighs against relief.[11]

_____

[11]Unlike Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298, the Commissioner now asserts in Notice 2012-8, sec. 4.03(2)(a), 2012-4 I.R.B. at 313,
(continued...)

2.    Economic Hardship

The second factor for consideration is whether the requesting spouse would suffer economic hardship were relief not granted.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298.  Our analysis of whether such economic hardship would occur is directed to the taxpayer's economic circumstances at the time of trial.  Porter v. Commissioner, 132 T.C. at 211 n.7.  Petitioner claims, without legal or financial analysis, that making her liable for the 2000 tax will "paralyze her financially and render her insolvent for the rest of her life."  We are not persuaded.

Economic hardship, for purposes of section 6015(f), occurs where the requesting spouse is unable to pay his or her reasonable basic living expenses if held liable for the tax owed.  See sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. A taxpayer's ability to pay basic living expenses is determined by considering, among other factors:  the individual's age, employment status and history, ability to earn, and number of dependents; the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; the cost of living in the geographic area in which the taxpayer resides; and any

---

[11](...continued)
that the marital status factor is neutral where a husband and wife are still married.

extraordinary circumstances. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. While an inquiry into the reasonableness of basic living expenses considers the individual taxpayer's unique circumstances, it does not require an allowance to maintain affluent or luxurious standards of living. See sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.

Petitioner was employed by Cook County earning $33,000 per year when the trial of this case was held. Each of her children is older than 18 years of age, and at least two of them are college educated. Although the record concerning her financial status at the time of trial is inadequately developed, we conclude that petitioner was able to meet her basic living expenses.[12] The Lake Forest residence and each of the rental properties were owned free and clear of any encumbrances. In 2005, the most current year for which financial data was presented, petitioner earned interest income of $36,134 and net rental income of $1,485. She also owned a CD with a 2004 yearend balance of more than $1.2 million. The fact that

---

[12]Petitioner failed to prove that she did not own the Lake Forest residence or the rental properties or that the CD was not available for her use. In the absence of such evidence, we presume that it did not exist or that it was not favorable to her position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) ("The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable."), aff'd, 162 F.2d 513 (10th Cir. 1947). Moreover, other than a claim of general economic hardship, the record does specify the amount of petitioner's basic living expenses.

the Srirams paid cash for a new car in 2007 also shows, we believe, that they were able to meet their basic living expenses. Whereas petitioner relies upon her testimony to prove economic hardship, we do not, because her testimony is uncorroborated notwithstanding the fact that the Srirams presented thousands of pages of financial records in connection with their criminal investigation. This factor weighs against relief.[13]

### 3. Knowledge or Reason To Know

The third factor in the case of an underpayment of tax contemplates whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the income tax liability when the return was signed.[14] See Toppi v. Commissioner, T.C. Memo. 2008-156, 95 T.C.M. 1612, 1614 (2008). Petitioner

---

[13]The Commissioner now states in Notice 2012-8, sec. 4.03(2)(b), 2012-4 I.R.B. at 313, that the economic hardship factor should be considered neutral where denying relief from joint and several liability will not result in economic hardship to the requesting spouse.

[14]Under Notice 2012-8, sec. 4.03(2)(c)(ii), 2012-4 I.R.B. at 314, the knowledge factor weighs in favor of relief where the requesting spouse, because of abuse and fear of retaliation, was unable to question the treatment of items on the return or the payment of tax due or challenge the nonrequesting spouse's assurances of payment. Also under the proposed revenue procedure, abuse may render the significant benefit factor neutral. See Notice 2012-8, sec. 4.03(2)(e), 2012-4 I.R.B. at 314. In failing to prove abuse by a preponderance of the evidence, see infra p. 23, petitioner may not successfully assert that abuse negates her knowledge that Dr. Sriram might not pay the tax due or the significant benefit she received from failing to pay the tax due.

argues that she had "no reason" to believe that her husband would not pay the liability reported on the 2000 return. We disagree.

We have interpreted the knowledge requirement in an underpayment case as focusing on whether the taxpayer knew that his or her spouse would not pay the tax within a reasonably prompt time after filing the joint return. See Banderas v. Commissioner, T.C. Memo. 2007-129, 93 T.C.M. (CCH) 1247, 1251 (2007); cf. Notice 2012-8, sec. 4.03(2)(c)(ii), 2012-4 I.R.B. at 314. Attached to the 2000 return was a statement acknowledging that the Srirams were each subjects of an ongoing criminal investigation and stating that they could not pay the tax due until court-frozen assets were released to them or until Dr. Sriram was allowed to practice medicine. We look to that attachment, which was stated in plain and simple terms, as persuasive circumstantial evidence that petitioner knew or had reason to know that Dr. Sriram would not pay the unpaid tax within a reasonably short time. Such nonpayment might occur if, for example, Dr. Sriram could not practice medicine or the frozen assets were used for restitution. This factor weighs against relief.

### 4. Nonrequesting Spouse's Legal Obligation

The fourth factor for consideration is whether the nonrequesting spouse was under a legal obligation to pay the outstanding tax liability under a divorce decree or

other agreement. The record does not show Dr. Sriram was legally obligated under a divorce decree or other contractual arrangement to pay the tax liability on the 2000 return. This factor is neutral.

5.    Significant Benefit

The fifth factor to be weighed is whether the requesting spouse benefited from the unpaid income tax liability beyond normal support. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299. A significant benefit may be direct or indirect. Sec. 1.6015-2(d), Income Tax Regs. In failing to pay their 2000 tax liability through withholding or estimated tax payments, the Srirams were able to repay the mortgage on the Lake Forest residence, maintain the rental properties, and fund the CD in part. In not paying the 2000 liability from 2001 through 2005, the Srirams earned $202,582 of interest income ($97,925 in 2001; $31,461 in 2002; $18,169 in 2003; $18,893 in 2004; and $36,134 in 2005). They maintained the rental properties throughout those years and earned $24,047 of rental income therefrom ($21,120 in 2001; $3,093 in 2002; $6,166 in 2003; ($7,817) in 2004; and $1,485 in 2005). They purchased a car for $30,000 in cash. Finally, at least two of petitioner's children attended college, though the record is not clear whether petitioner or Dr. Sriram contributed money to either child's education.

We conclude that petitioner received a significant benefit from the unpaid income tax liabilities. Accordingly, this factor weighs against relief.

### 6. Compliance With Tax Laws

The sixth tax compliance factor weighs in favor of relief if the requesting spouse has made a good-faith effort to comply with income tax laws in years after the year for which relief is requested. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi). Respondent states on brief that petitioner was in compliance with the Federal tax laws in the years after 2000 and that this factor should be construed as neutral.[15] In recent caselaw we have consistently recognized that a taxpayer's good-faith effort to comply with income tax laws in the years following the year for which relief is requested is a factor weighing in favor of relief. See, e.g., Pullins v. Commissioner, 136 T.C. at 452; Haggerty v. Commissioner, T.C. Memo. 2011-284, 102 T.C.M. (CCH) 563, 566 (2011); Hiramanek v. Commissioner, T.C. Memo. 2011-280, 102 T.C.M. (CCH) 546, 550 (2011); Karam v. Commissioner, T.C.

_____

[15]Respondent states on brief that "there is no evidence" of petitioner's noncompliance with the Federal tax laws since 2000. We note that the Form 886-A states that petitioner filed her 2001 Federal income tax return late. The scant record before us does not include an Internal Revenue Service account transcript or any evidence that allows us to reconcile these inconsistent statements. In any event, we need not do so because we treat respondent's statement on brief as a concession of petitioner's compliance. See Estate of Johnson v. Commissioner, T.C. Memo. 2001-182, 82 T.C.M. (CCH) 206, 234 (2001) (and cases cited thereat), aff'd, 129 Fed. Appx. 597 (11th Cir. 2005).

Memo. 2011-230, 102 T.C.M. (CCH) 311, 315 (2011).  Indeed, the Commissioner now contends in Notice 2012-8, sec. 4.03(2)(f)(3), 2012-4 I.R.B. at 314-315, that full compliance with the tax laws weighs in favor of relief and that good-faith partial compliance should be considered neutral.  We conclude that this factor favors relief.

7.    Abuse

Abusive behavior by the nonrequesting spouse toward the requesting spouse is a factor favoring relief.  Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299.  Abuse may be physical or mental.  Nihiser v. Commissioner, T.C. Memo. 2008-135, 95 T.C.M. (CCH) 1531, 1536-1537 (2008).  Allegations of abuse require substantiation, or at a minimum, specificity.  See e.g., Fox v. Commissioner, T.C. Memo. 2006-22, 91 T.C.M. (CCH) 731, 734 (2006) (accepting a requesting spouse's claim of abuse where corroborated by a police incident report); Knorr v. Commissioner, T.C. Memo. 2004-212, 88 T.C.M. (CCH) 273, 278 (2004) (deeming the abuse factor neutral where the requesting spouse provided uncorroborated and generalized claims of physical and emotional abuse); Collier v. Commissioner, T.C. Memo. 2002-144, 83 T.C.M. (CCH) 1799, 1809 (2002) (finding absence of abuse without specific details).

Abuse is a genuine reason to grant relief from joint and several liability, and we are sensitive to the legal issues and the emotions related thereto. However, we are not persuaded by petitioner's allegation of abuse that is unaccompanied by details and corroboration. Petitioner alleges that Dr. Sriram assaulted her on one occasion between 1995 and 2000. She provided no details of this alleged assault and did not offer corroborating evidence to support her statement. She claims to have reported the event to the Lake Forest police, but she has not offered a police incident report and cannot identify the date when this allegedly happened. To carry one's burden of proof on the issue of abuse, it is helpful to have some corroborating evidence or substantiation. Cf. Thomassen v. Commissioner, T.C. Memo. 2011-88, 101 T.C.M. (CCH) 1397, 1405 (2011) (psychological abuse found where supported with testimony that one child was driven to attempt suicide while another child's friends urged the taxpayer to find shelter for herself and her younger children). Petitioner has none. She claims that certain cultural factors restrain her from buttressing her testimony, but at the end of the day we have only her vague testimony. Making an allegation of even a single act of physical abuse is serious enough, yet we decline to confirm its accuracy by petitioner's self-serving testimony alone. We consider this factor neutral.

8.      Mental or Physical Health

The final enumerated factor focuses on whether the requesting spouse was in poor mental or physical health on the date she signed the tax return or when relief was requested.  Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii).  Where the requesting spouse is not in poor mental or physical health, this factor is considered neutral.  See id. sec. 4.03(2)(b).  Petitioner does not claim that she was in poor mental or physical health when she signed the 2000 return or when she requested equitable relief.  This factor is neutral.

9.      Conclusion

Of the factors listed in Rev. Proc. 2003-61, sec. 4.03, one favors relief (compliance with tax laws), four weigh against relief (marital status, economic hardship, knowledge or reason to know, and significant benefit), and three are neutral (legal obligation, physical abuse, and mental or physical health).  On the basis of our analysis as informed by Rev. Proc. 2003-61, supra, we conclude that petitioner is not entitled to equitable relief.  After applying Notice 2012-8, sec. 4.03, two previously negative factors (marital status and economic hardship) turn neutral.  This rebalance of factors, however, does not alter our perception that petitioner is not entitled to equitable relief.

To be sure, petitioner realized a significant economic benefit from failing to pay the 2000 Federal tax liability, and she knew or had reason to know that Dr. Sriram could not fully pay the tax within a reasonable time after signing the return. In that respect, the record does not favor her. Had petitioner established abuse by a preponderance of the evidence, which she did not, the last two negative factors (knowledge or reason to know and significant benefit) might have tipped the scales of equity in her favor. But she did not prove abuse and may therefore not be held harmless for the 2000 tax liability. After balancing the record as a whole and with due consideration of the equitable considerations presented, we hold that petitioner is not entitled to relief from joint and several liability under section 6015(f). In so deciding, we have considered all of petitioner's arguments for a contrary holding, and to the extent not discussed herein we conclude they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.