T.C. Memo. 2012-195

UNITED STATES TAX COURT

NEIL J. YOSINSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6645-10.                          Filed July 12, 2012.

Neil J. Yosinski, pro se.

<u>Michael T. Garrett</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Petitioner filed a petition in this Court asking us to review respondent's determination denying his request for relief under section 6015 with respect to Federal income tax for 2006.  The amount of the relief requested equaled the sum of  (1) the reported tax on petitioner and his then wife's joint income tax

return for 2006 (reported tax), and (2) the tax owed on unreported income (unreported tax). Most of the reported tax is attributable to petitioner's receipt of distributions from his individual retirement account (IRA); substantially all of the unreported tax stems from the gain attributable to petitioner's sale of securities. In denying petitioner's request for section 6015 relief, respondent asserted that section 6015 relief is not allowed for tax attributable to the requesting spouse's own income. For the reasons discussed infra, we sustain respondent's determination.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulated facts and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Colorado.

Petitioner and Colleen Gloceri Yosinski (Colleen Gloceri) had been married for 25 years before the date of their divorce, February 13, 2007. They began living apart in August 2005. During 2006 they had four dependent children.

Petitioner and Colleen Gloceri filed a joint Federal income tax return for 2006. On that return, they reported the following:

1. $167,433 as the taxable amount of $442,131 of IRA distributions;

2. $1,255 as taxable wages;

3. $46 as taxable interest;

4. a capital loss of $3,000;

5. total income of $167,014;

6. tax of $27,505;

7. an additional tax pursuant to section 72(t) of $16,743;

8. total tax of $44,248;

9. federal income tax withheld of $20;

10. credit for federal telephone excise tax paid of $60; and

11. an amount owed (including a $2,093 estimated tax penalty) of $46,261.[1]

Petitioner was the breadwinner of the family. He worked as an electrical engineer in the research and development department of Agilent Technologies. In the spring of 2005 he voluntarily separated from Agilent Technologies, anticipating

_____

[1]All tax owed for 2006, plus interest, was paid in October 2011. See infra p. 7.

he and his family would live on his retirement savings. He estimated his net worth to be "just under $2 million" at the time he left Agilent Technologies.

Colleen Gloceri was a stay-at-home mom. She had no substantial source of income. During 2006 she worked part time at J.C. Penney, earning $1,255.

In connection with the divorce, the District Court, El Paso County, Colorado (Colorado district court), ordered petitioner to make monthly spousal maintenance and child support payments to Colleen Gloceri.[2] At this time petitioner was no longer employed. Consequently, the Colorado district court anticipated that petitioner would have to withdraw funds from his retirement accounts to make these payments and support himself. Further, petitioner was required to pay the couple's marital debts and approximately $50,000 to Colleen Gloceri for the purpose of completing construction on the marital house.[3] To meet his obligations, and after consulting with a financial adviser, petitioner rolled over three retirement (section 401 (k)) accounts into a single IRA. During 2006 he withdrew approximately

---

[2]Petitioner refused to stipulate a complete copy of the divorce hearing transcript.

[3]Petitioner, Colleen Gloceri, and their children moved into the marital house in 2001 and continuously lived there before the issuance of a Certificate of Occupancy in 2011. The marital house was sold in October 2011. See infra p. 7.

$442,000 from the IRA. A portion of the amounts withdrawn (distributions) was given to Colleen Gloceri; petitioner retained the amount not given to Colleen Gloceri. No income tax was withheld from the distributions. The distributions were subject to taxation, as well as the section 72(t) additional tax, because they were not made pursuant to a qualified domestic relations order. See secs. 414(p)(1), 72(t)(2)(c).

Petitioner and Colleen Gloceri's separation and subsequent divorce was acrimonious. Each battled the other every step of the way throughout the divorce proceedings. Each had a restraining order against the other; each filed police reports and contempt charges against the other. Indeed, five years after their divorce petitioner and Colleen Gloceri are still litigating financial matters in the Colorado court system.

The 2006 joint income tax return was prepared by an accountant hired by petitioner. As shown supra p. 3, the tax reported on the return stems mostly from income attributable to petitioner.

In addition to the reported tax, respondent determined, using information from third party payors, that petitioner and Colleen Gloceri failed to report gain from the sale by petitioner of $32,637 in Agilent Technologies securities and the receipt of $37 in taxable interest by Colleen Gloceri. This determination resulted in an

assessed tax deficiency of $9,332, an assessed accuracy-related penalty under section 6662 of $1,866, and related interest on December 1, 2008.

Petitioner filed a Form 8857, Request for Innocent Spouse Relief, dated December 1, 2008, and a related collection information statement; petitioner's submission was received by respondent on February 25, 2009.[4] On July 21, 2009, respondent sent petitioner a preliminary determination notice informing him that he was not entitled to the relief requested for 2006. On August 16, 2009, petitioner, through his representative, sent respondent a letter disputing respondent's determination. A conference between one of respondent's Appeals officers and petitioner's representative was held on December 3, 2009. During that conference the Appeals officer informed petitioner's representative that petitioner was not entitled to the relief sought. The Appeals officer sent a followup letter to petitioner's representative the next day, and on January 14, 2010, the Appeals team manager sent petitioner a final Appeals determination notice formally denying petitioner's request for relief under section 6015 for 2006.

Respondent determined that petitioner was not entitled to relief under section 6015 because substantially all the self-reported 2006 income tax liability was

---

[4]The reason for the nearly two-month delay between the dating of Form 8857 and the receipt of the form by respondent is not contained in the record.

attributable to distributions from petitioner's IRA, an asset over which petitioner had sole custody and control. Moreover, respondent determined petitioner was not entitled to relief for the $9,332 assessed deficiency because that deficiency was primarily attributable to petitioner's sale of Agilent Technologies stock.

On March 17, 2010, petitioner filed a petition in this Court. Thereafter, Colleen Gloceri filed a request for relief under section 6015 for 2006. At the time of trial (November 29, 2011), respondent had preliminarily agreed to grant Colleen Gloceri's request for section 6015 relief. Petitioner acknowledged that he was "well aware of the tax liability and how it occurred." But he asserts that there is a "fairness issue" because respondent had not attempted to collect any tax from Colleen Gloceri.

At the time of their separation petitioner and Colleen Gloceri were in the process of completing the construction of the marital house. Construction was approximately 97% completed when petitioner and Colleen Gloceri separated. Completion was delayed by the parties' bickering, but the construction was finished in 2011. In October 2011 the marital house was sold for $690,000. Because respondent had an outstanding lien against the marital house with respect to petitioner and Colleen Gloceri's unpaid tax liability for 2006, the liability at issue was fully paid from the proceeds. After paying off respondent's lien and other

expenses related to the sale of the marital house, petitioner received approximately $224,000 in proceeds.  Colleen Gloceri also received a portion of the proceeds; the exact amount she received is not set forth in the record.

## OPINION

Married couples may choose to file their Federal income tax returns jointly. Sec. 6013(a).  Couples filing joint returns are jointly and severally liable for the taxes shown to be due thereon or subsequently determined to be due.  Sec. 6013(d)(3). Section 6015 provides relief from liability for filers of joint returns under three subsections:  (b), (c), and (f).

Section 6015(b) provides relief where there is an understatement of tax attributable to erroneous items[5] of one individual filing the joint return (the nonrequesting spouse) and the other individual filing the joint return (the requesting spouse) establishes that he/she did not know, and had no reason to know, that there was such an understatement.  Under section 6015(c) the tax liability may be

---

[5]Sec. 1.6015-1(h)(4), Income Tax Regs., defines an erroneous item as:

[A]ny item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported (including improperly characterized) on an individual income tax return.  For example, unreported income from an investment asset resulting in an understatement or deficiency in tax is an erroneous item.  Similarly, ordinary income that is improperly reported as capital gain resulting in an understatement or deficiency in tax is also an erroneous item.  * * *

apportioned between former or legally separated spouses. A spouse requesting section 6015(c) relief is not entitled to relief if he/she had actual knowledge, at the time he/she signed the return, of any item giving rise to a deficiency (or portion thereof).[6] Under section 6015(b) and (c) relief is available only from an understatement or deficiency and not with respect to an underpayment of income tax reported on a joint return. Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).

Petitioner requests relief from the reported tax on his and Colleen Gloceri's joint tax return for 2006, as well as from the deficiency (nonreported tax) stemming from unreported income. Petitioner is not entitled to relief with respect to the reported tax on his and Colleen Gloceri's joint tax return for 2006 under section 6015(b) or (c). Nor is petitioner entitled to relief with respect to the nonreported tax on the gain from the sale of the Agilent Technologies stock. However, he is entitled to relief under section 6015(c) with respect to the nonreported tax on the $37 of interest income attributable to Colleen Gloceri. We now decide whether petitioner is entitled to relief with respect to the reported tax and nonreported tax on the

---

[6]Sec. 1.6015-2(c), Income Tax Regs., provides that all of the facts and circumstances are to be considered in determining whether the requesting spouse had reason to know of an understatement. The facts and circumstances to be considered include, but are not limited to, "the extent of the requesting spouse's participation in the activity that resulted in the erroneous item".

sale of the Agilent Technologies stock under section 6015(f). We hold he is not.

Section 6015(f) provides relief from an underpayment of tax or deficiency "[u]nder procedures prescribed by the Secretary" where: (1) it is determined that, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency or any portion of either, and (2) relief is not available under section 6015(b) or (c). The Internal Revenue Service (IRS) has prescribed guidelines for determining whether a requesting spouse qualifies for relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296 (effective for requests for section 6015(f) relief filed during or after 2003).[7] If the IRS denies equitable relief under section 6015(f), then pursuant to section 6015(e)(1)(A) the requesting spouse may petition this Court to determine the appropriate relief available. We thereafter will determine whether the requesting spouse is entitled to equitable relief applying a de novo standard of review as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. 203, 210

---

[7]We have stated that the Court will consider these guidelines, but we are not bound by them in evaluating the facts and circumstances in deciding whether equitable relief is appropriate. See Pullins v. Commissioner, 136 T.C. 432. 438-439 (2011); Deihl v. Commissioner, T.C. Memo. 2012-176; Sriram v. Commissioner, T.C. Memo. 2012-91.

(2009).[8]  The requesting spouse bears the burden of proving his/her entitlement to the requested relief.  See Rule 142(a).

The IRS refused to grant equitable relief to petitioner pursuant to section 6015(f).  In so doing, the Appeals officer applied the factors in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, which lists the following seven requirements that must be satisfied before a request for equitable relief will be considered:

(1)  The requesting spouse filed a joint return for the taxable year for which relief is sought.

(2)  Relief is not available under section 6015(b) or (c).

(3)  The request for relief must be timely filed.

(A)  If the request is for relief from a liability (or a portion of liability) that remains unpaid, the request must be made before the expiration of the period of limitations on collection of the income tax liability--e.g., generally 10 years after the assessment of tax.

(B)  If the request is for a refund or credit of amounts paid, the   request must be made within three years from the time the return was filed or two years from the time the return was paid, whichever is later.

---

[8]The standard of review (de novo or abuse of discretion) does not affect our decision in this matter.

(4) There was no fraudulent transfer of assets between the spouses.

(5) The nonrequesting spouse did not transfer disqualified assets to the requesting spouse.

(6) The requesting spouse did not knowingly participate in the filing of a fraudulent joint return.

(7) The income tax liability from which the requesting spouse seeks relief is attributable (in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income.

In his posttrial brief respondent concedes that petitioner satisfies the first six of the aforesaid seven requirements. However, respondent asserts that petitioner does not satisfy the seventh requirement because the tax liability from which he seeks relief is attributable to his own income.

After the trial, on January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, which announced that a proposed revenue procedure updating Rev. Proc. 2003-61, supra, will be forthcoming. That proposed revenue procedure, if finalized, will revise the factors that the IRS will use to evaluate requests for equitable relief under section 6015(f). The proposed revenue procedure will retain the aforementioned seven threshold requirements for equitable relief. It will also provide that the granting of relief should be considered if the requesting spouse

establishes he/she was the victim of abuse before the return was signed and did not

challenge the treatment of any items on the return, or question the payment of any

balance due reported on the return, for fear of the nonrequesting spouse's

retaliation.[9]

Petitioner asserts that he satisfied all seven threshold requirements for

equitable relief under section 6015(f), including the requirement that the income tax

liability from which he seeks relief be attributable to an item of his spouse (i.e.

Colleen Gloceri). In making this assertion, petitioner maintains that once the

Colorado district court ordered him to make monthly spousal maintenance and child

support payments to Colleen Gloceri, he was "acting as an agent to implement the

orders of the court" and thus the distributions from the IRA were not his income.

Continuing, petitioner reasons: "an IRA does not generate any income simply by its

possession, it is only generating income when it is withdrawn. Those withdrawals

were petitioned by my ex-spouse through the Court. So I am saying that is income

---

[9]Petitioner contends that we should apply the provisions of the proposed revenue procedure set forth in Notice 2012-8, 2012-4 I.R.B. 309, in determining whether he is entitled to equitable relief under sec. 6015(f). In Sriram v. Commissioner, T.C. Memo. 2012-91, slip op. at 9 n.7, we stated that we would "continue to apply the factors in Rev. Proc. 2003-61, 2003-2 C.B. 296, in view of the fact that the proposed revenue procedure is not final and because the comment period under the notice only recently closed." See also Diehl v. Commissioner, T.C. Memo. 2012-176. We shall apply the factors in Rev. Proc. 2003-61, supra, in this case.

that is attributable to her, not attributable to me". In his posttrial memorandum, petitioner posits "ownership by definition conveys a free ability to use the object in question at ones [sic] own discretion for ones [sic] own benefit". Petitioner claims he faced jail time if he did not make the monthly withdrawals from his IRA, which he asserts made him a victim of abuse.

We disagree with petitioner's argument. All the funds used to establish the IRA were derived from petitioner's employer-sponsored retirement accounts, and it is an established principle that income is taxable to the person that earns it. Lucas v. Earl, 281 U.S. 111, 114-115 (1930). Petitioner transferred his three section 401(k) accounts to an IRA only after consulting with a financial adviser regarding how best he should receive (from a tax viewpoint) structured monthly distributions.

We have no knowledge as to the specific order of the Colorado district court. However, as best we can determine, the Colorado district court did not specifically order petitioner to transfer his three section 401(k) accounts into a single IRA and make distributions therefrom. Moreover, with regard to the sale of the Agilent Technologies securities, petitioner candidly admitted calling his broker and ordering the sale of the securities. Petitioner's actual knowledge of the sale of the securities weighs heavily against granting his request for relief from the deficiency for unreported income.

Petitioner asserts he did not know, and had no reason to know, that Colleen Gloceri would not pay the couple's reported 2006 tax liability. We are skeptical that petitioner did not know that Colleen Gloceri would not pay the 2006 tax liability. Colleen Gloceri had no source of substantial income, earning only a meager amount in 2006. And there is nothing in the record to indicate that Colleen Gloceri had any assets of substantial value in her own name.

In conclusion, we find that (1) petitioner is not entitled to equitable relief from joint liability under section 6015(f) for the reported and nonreported tax, but (2) he is entitled to relief from the tax on the $37 of unreported interest income attributable to Colleen Gloceri, pursuant to section 6015(c). In reaching these findings, we have considered all arguments and contentions made by petitioner, and to the extent not discussed herein, conclude that they are meritless or irrelevant.

To reflect the foregoing,

Decision will be entered

under Rule 155.