T.C. Summary Opinion 2013-10

UNITED STATES TAX COURT

KENNETH JORGENSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1510-11S.                    Filed February 11, 2013.

Kenneth Jorgenson, pro se.

Bradley C. Plovan, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b), the

_____

[1]All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

By final notice of determination dated November 10, 2010, respondent denied petitioner's claim for relief from joint and several liability with regard to Federal income tax for 2008. Petitioner timely filed a petition with the Court under section 6015(e) for review of respondent's determination. The sole issue for decision is whether petitioner is entitled to relief from joint and several liability for the taxable year 2008 under section 6015(f).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner resided in Maryland at the time the petition was filed.

## I. Petitioner's Background

Petitioner did not graduate from high school. Petitioner worked for a civil engineering firm for approximately 47 years and retired in 2004. At the time petitioner retired, he was earning $12 per hour.

Petitioner is married to and resides with his wife, Elizabeth Jorgenson,[2] in a home that Mrs. Jorgenson owns jointly with several of her siblings. There is no mortgage on the property. Petitioner and Mrs. Jorgenson's daughter and the daughter's three adult sons (grandsons) also reside in the home.

## II. Household Finances

Petitioner and Mrs. Jorgenson maintain separate bank accounts. Petitioner generally refuses to contribute to any of the household expenses as long as his grandsons reside in the home. Consequently, Mrs. Jorgenson pays most of the household expenses, while the grandsons each pay $50 per month in rent. Petitioner prefers to leave the house during the day, and he spends his time gambling at racetracks and casinos.

## III. 2008 Joint Tax Return

On April 15, 2009, petitioner and Mrs. Jorgenson met with their tax return preparer to review and sign their 2008 joint Federal income tax return (return). When presented with the return for review, petitioner learned for the first time that Mrs. Jorgenson had withdrawn $205,213 from various retirement accounts during

---

[2]Although Mrs. Jorgenson was served with a notice explaining her right to intervene in this case in accordance with Rule 325(a), she did not do so. Mrs. Jorgenson appeared at trial and testified in support of petitioner's claim for relief.

2008 and that $39,077 in income tax attributable to those withdrawals was due to be paid with the return.[3]

Mrs. Jorgenson informed petitioner that she had used all of her retirement funds to pay their daughter's medical bills and other expenses and their grandsons' legal bills. Mrs. Jorgenson mistakenly believed that sufficient tax had been withheld from her retirement account distributions so that no additional tax would be due with the return. Petitioner was extremely angry with Mrs. Jorgenson because he knew that she did not have the funds to pay the tax reported to be due on the return. Petitioner nevertheless signed the joint return, and it was filed with the Internal Revenue Service (IRS) on June 22, 2009. Petitioner and Mrs. Jorgenson did not pay the balance of tax due with the return.

A few days after the joint return was filed, petitioner had second thoughts and he contacted the IRS to see whether he could file a separate return. Petitioner was informed that he could not file a separate return.

IV. Petitioner's Request for Spousal Relief

On February 4, 2010, petitioner submitted to respondent Form 8857, Request for Innocent Spouse Relief. Petitioner reported on the Form 8857 that he received

---

[3]Respondent does not allege that any part of the $39,077 in tax due was attributable to income reported by petitioner.

monthly income totaling $1,760 (comprising of pension income of $360 and Social Security benefits of $1,400) and that he incurred monthly expenses itemized as follows:

| Monthly expense | Amount |
|---|---|
| Taxes | $40 |
| Food | 300 |
| Car | 500 |
| Medical | 300 |
| Clothing | 200 |
| Car repair | 300 |
| Gambling | 400 |
| Total | 2,040 |

## V.  Compliance With Income Tax Obligations

After the taxable year 2008 petitioner filed separate Federal income tax returns reporting income for the taxable years and in the amounts as follows:

| Year | Pensions/Annuities | Social Security | Total |
|---|---|---|---|
| 2009 | $39,800 | $20,273 | $60,073 |
| 2010 | 19,446 | 20,280 | 39,726 |
| 2011 | 24,624 | 20,274 | 44,898 |

## Discussion

Generally, spouses who file a joint Federal income tax return are held jointly and severally liable for the entire tax liability.  Sec. 6013(d)(3).  A spouse may be

relieved from joint and several tax liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for any unpaid tax and relief is not available to the spouse under section 6015(b) or (c).[4]

Congress provided the Court with express authority to review the Commissioner's denial of equitable relief under section 6015(f). Sec. 6015(e)(1). The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015(f). See Porter v. Commissioner, 132 T.C. 203, 210 (2009). The spouse requesting relief bears the burden of proof. See Rule 142(a); Porter v. Commissioner, 132 T.C. at 210; Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

The Commissioner has published guidance setting forth criteria that IRS personnel shall consider in determining whether a requesting spouse is entitled to relief under section 6015(f). Rev. Proc. 2003-61, 2003-2 C.B. 296, superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

---

[4]Petitioner seeks relief from an underpayment of income tax, not a proposed or assessed deficiency of income tax. Therefore, he is not eligible for relief under sec. 6015(b) or (c). See sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

I. Section 4.01:  Threshold Conditions

Under the Commissioner's published guidance, the requesting spouse must first satisfy certain threshold conditions in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298.  Respondent concedes that petitioner has satisfied all of the threshold conditions.

II. Section 4.02:  Safe Harbor Requirements for Section 6015(f) Relief

When the threshold conditions have been met, the Commissioner will ordinarily grant relief with respect to an underpayment of tax if the requesting spouse meets each of the so-called safe harbor requirements set forth in Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.[5]  Petitioner does not satisfy all of the safe harbor requirements:  Petitioner and Mrs. Jorgenson remain married and have never been separated (either legally or by simply living apart).  In addition, as discussed below, petitioner knew when he signed the joint return that Mrs. Jorgenson would not pay the tax liability.

---

[5]Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, permits relief if all the following requirements are satisfied:  (1) on the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief.

III. Section 4.03: Facts and Circumstances Test

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the safe harbor requirements, the Commissioner may nevertheless grant relief after considering the criteria set forth in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299. Rev. Proc. 2003-61, sec. 4.03, provides the following nonexclusive list of factors the Commissioner will consider in determining whether relief is warranted: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if relief is not granted; (3) whether on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; (4) whether the nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability; and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year(s) to which the request for relief relates. Two additional factors that the Commissioner may consider in favor of granting relief are: (1) whether the nonrequesting spouse abused the requesting spouse, and (2) whether the

requesting spouse was in poor mental or physical health at the time he or she signed the return or requested relief.  See id. sec. 4.03(2)(b)(i) and (ii), 2003-2 C.B. at 299.[6]

The Commissioner's guidelines are relevant to our inquiry, but the Court is not rigidly bound by them inasmuch as our analysis and determination ultimately turns on an evaluation of all the facts and circumstances.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210; Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40.

1.  Marital Status

As previously mentioned, petitioner and Mrs. Jorgenson remain married and were never separated.  Accordingly, the marital status factor is neutral.

2.  Economic Hardship

Petitioner's Form 8857, submitted to the Commissioner in February 2010, states that petitioner received monthly income totaling $1,760 (comprising pension

---

[6]On January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, announcing that a proposed revenue procedure updating Rev. Proc. 2003-61, supra, will be forthcoming.  That proposed revenue procedure, if finalized, will revise the factors that the Commissioner will use to evaluate requests for equitable relief under sec. 6015(f).  Consistent with the Court's approach in Sriram v. Commissioner, T.C. Memo. 2012-91, we have evaluated the record in this case against the factors set forth in Rev. Proc. 2003-61, supra, in view of the fact that the revenue procedure proposed in Notice 2012-8, supra, is not final.

income of $360 and Social Security benefits of $1,400), and that he incurred monthly expenses totaling $2,040. In contrast, petitioner's Federal income tax returns for 2009, 2010, and 2011 indicate that he received annual pension and annuity payments and Social Security benefits totaling $60,073, $39,726, and $44,898, respectively. Thus, petitioner received approximately $5,006, $3,310, and $3,741 of gross income on a monthly basis during the years 2009, 2010, and 2011, respectively.

To ascertain whether a requesting spouse will suffer economic hardship if spousal relief under section 6015(f) is denied, Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs. (providing for the release of a levy if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses).

The record shows that petitioner's gross income during 2009, 2010, and 2011 (whether measured on a monthly or yearly basis) far exceeded his reasonable basic living expenses. For example, petitioner's gross income during 2011, measured on a monthly basis, was $3,741. Although petitioner reported monthly living expenses of $2,040, we disregard the $400 that he reported as a monthly gambling expense because gambling expenditures are not recognized as a reasonable basic living

expense under section 301.6343-1(b)(4)(ii)(B), Proced. & Admin. Regs. In any event, petitioner's gross monthly income significantly exceeded his reasonable basic living expenses. Petitioner did not offer any evidence at trial to show that his financial situation has changed significantly since the end of 2011. See Pullins v. Commissioner, 136 T.C. at 446-447. We conclude that petitioner has not shown that he would suffer economic hardship if he is denied relief from joint and several liability. This factor weighs against relief.[7]

3. Knowledge

On April 15, 2009, petitioner learned for the first time that Mrs. Jorgenson had withdrawn $205,213 from various retirement accounts during 2008 and that $39,077 in tax attributable to the withdrawals was due to be paid with the return. Petitioner knew at that time that Mrs. Jorgenson did not have the funds necessary to pay the tax due. Nevertheless, petitioner and Mrs. Jorgenson signed the joint return and filed it on June 22, 2009. This factor weighs against relief.

---

[7]We note that the Commissioner proposes in Notice 2012-8, sec. 4.03(2)(b), 2012-4 I.R.B. at 313, that the economic hardship factor should be considered neutral where denying relief from joint and several liability will not result in economic hardship to the requesting spouse.

4. <u>Nonrequesting Spouse's Legal Obligation</u>

Mrs. Jorgenson did not have a legal obligation to pay the outstanding tax liability for 2008 pursuant to a divorce decree or an agreement. This factor is neutral.

5. <u>Significant Benefit</u>

Petitioner did not receive a direct benefit from the unpaid income tax liability or Mrs. Jorgenson's retirement benefits. Mrs. Jorgenson used the funds that she withdrew from her various retirement accounts to pay their daughter's medical bills and other expenses and their grandsons' legal bills. This factor generally weighs in favor of relief.

6. <u>Compliance With Income Tax Laws</u>

Petitioner filed separate tax returns for the taxable years 2009, 2010, and 2011 and is otherwise in compliance with Federal income tax laws. This factor weighs in favor of relief.

7. <u>Mental/Physical Health</u>

Petitioner did not offer any evidence that he was in poor mental or physical health on the date he signed the 2008 return or on the date he submitted his request for spousal relief. This factor is neutral.

8. Abuse

Petitioner did not offer any evidence that Mrs. Jorgenson had abused him at any time. This factor is neutral.

IV. Conclusion

Considering all the facts and circumstances, we are not persuaded that it would be inequitable to deny petitioner spousal relief under section 6015(f). As the preceding discussion shows, there are factors in this case that weigh in favor of relief and factors that weigh against relief. Our decision whether relief is appropriate, however, is not based on a simple tally of those factors. See, e.g. Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40. Rather, our decision is heavily influenced by the unique and difficult circumstances of this case. Petitioner knew when he signed the joint return that Mrs. Jorgenson could not pay the tax reported to be due. In addition, petitioner will not suffer economic hardship if he is held jointly and severally liable for the tax liability.[8] Petitioner readily admits that he does not contribute to the household expenses, which fall primarily to

---

[8]Considering the entire record, we believe petitioner attempted to deceive the Commissioner when he submitted Form 8857 in February 2010 indicating that his monthly income was $1,760 when in fact his average monthly gross income during 2009 and 2010 was $5,006 and $3,310, respectively, leaving him with significant resources in excess of his reasonable basic living expenses. See sec. 301.6343-1(b)(4)(iii), Proced. & Admin. Regs. (to obtain a release of a levy due to economic hardship the taxpayer must act in good faith).

Mrs. Jorgenson.  Thus, although petitioner did not directly benefit from the unpaid income tax liability, he certainly enjoyed an indirect benefit inasmuch as Mrs. Jorgenson continues to pay his share of the household expenses.  Nor are we inclined (despite petitioner's expressed disdain for his family) to overlook the fact that Mrs. Jorgenson used her retirement funds to assist petitioner's daughter and his grandsons.

To summarize, we conclude that petitioner does not satisfy the safe harbor requirements of Rev. Proc. 2003-61, sec. 4.02, nor would it be inequitable to deny petitioner spousal relief considering all the facts and circumstances, including the various factors set forth in Rev. Proc. 2003-61, sec. 4.03.  Accordingly, we hold that petitioner is not entitled to relief from joint and several liability for the taxable year 2008 pursuant to section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.